### No. 9552.

### D. C. McCan & Son vs. Alfred Bradley—Terry, Intervenor.

The unpaid price of sale of movable property, unless it be specially provided to the contra-ry, is secured by vendor's lien.

A sale and counter-letter of movable property, recorded in the conveyance office in which transfers and contracts relative to real estate *alone* are required to be registered, are not notice to third persons equivalent to knowledge.

A contract, evidenced by an act of sale and a counter-letter, which together show that the sale, made part cash and part on time, although not designed by the parties to be abso-lutely final and conclusive, but intended to enable the vendor to use the notes in his business, the title to be put back in the vendor's name as soon as the notes issued are retired and returned to the purchaser and drawer, does not establish a simulation, but a real transaction, by which the title passed.

Purchasers of such notes, for a valid consideration and before maturity, are entitled to recover the amount thereof, with lien on the property sold.

APPEAL from the Civil District Court for the Parish of Orleans. Tissot, J.

*A. J. Murphy* for Plaintiffs and Appellants.

*E. E. Moise* and *W. H. Rogers* for Intervenor and Appellee.

---

The opinion of the Court was delivered by

Bermudez, C. J. This is an action on a promissory note, said to be secured by vendor's privilege on what is known as the Clipper saw-mill.

The defense is want of consideration; that the note represents part of the purchase price of said mill; that the sale was a simulation; that the plaintiffs never looked to defendant as purchaser, but to Terry, the vendor; that they acquired the note with full knowledge of the simu-lation, and that Terry is the only party liable for the note.

Terry intervened, joining the defendant, averring a respite obtained from his creditors, claiming title to the mill.

On Terry's going into bankruptcy, his syndic prosecuted the intervention.

There was judgment in favor of plaintiffs against Bradley for the amount sued for, with costs; rejecting the demand in other respects.

From this judgment the plaintiffs appeal.

The evidence shows that Terry sold to Bradley the Clipper saw-mill for $20,000, part cash, part on credit for which notes were issued, one of which is that sued on; that by the act of sale it is expressly stipulated that to secure the payment of the notes, vendor's lien was retained on the mill, which it appears had been erected upon *leased* property, and continued in Terry's possession.

It also establishes that a counter-letter was issued by Bradley to Terry, establishing that the transaction was a simulation, and that it was a mere method to enable Terry to raise money to tide over difficulties, the title to be put back in Terry's name on delivery to Bradley of the notes raised by him.

This counter-letter was registered in the conveyance office some short time before the application of Terry to his creditors for a respite.

It is after the registry of the counter-letter and the filing of the respite proceedings, but before the maturity of the note sued on, that the plaintiffs acquired it.

It is not disputed that plaintiffs acquired it for a valid consideration.

The only ground upon which their demand is resisted is that they were aware of the simulation of the sale of the mill by Terry to Bradley.

No evidence has been adduced connecting them, as parties or privies, to the transaction; but it is strenuously urged that they are presumed to have had full knowledge of that fact, by reason of the registry of the counter-letter and of the respite proceedings which occurred prior to their acquisition of the note, and that the circumstance of the purchase before maturity is utterly insignificant.

While denying that the sale was a simulation and that they had any knowledge of it, the plaintiffs press that Bradley and Terry are estopped from setting up that simulation, in exoneration of liability, and that they acquired the note in good faith in the ordinary course of business, for a valuable consideration, before maturity and without notice of any equities between the parties.

It is proper to remark that neither the defendant nor Terry's syndic has prayed for any amendment of the judgment. So that the only

question which this Court is called upon to determine is, simply, whether or not the plaintiffs are entitled to the vendor's lien on the mill, which was the object of the transaction, and which Terry placed on his Bilan as part of his assets.

Pretermitting the question whether Terry and Bradley are or are not absolutely estopped from setting up the simulation as a shield, and conceding *arguendo* that the knowledge of it might impair the right to recover, the fact of such knowledge was not actually established and is not inferrible.

The transaction was a real one. It was a sale, with a pact of redemption. The title passed to the purchaser, who was to retain it and to transfer it, but only after his notes would have been retired and handed back to him duly cancelled. The intention of the parties was the issue of notes, secured by vendor's lien, to be used by the vendor in his business in raising money, and the retirement of the notes and the return of them to the purchaser. The whole was for the protection of third parties and of the latter, who has continued to own the mill, as his notes have not been handed back pursuant to the agreement.

The registry of the act and of the counter-letter previous to the purchase of the note by plaintiffs did not convey knowledge of any simulation; the less so, as the transaction was a reality in form and substance.

One of the plaintiffs distinctly swears that he did not know of the simulation and of the counter-letter, and after inquiry from the notary before whom the sale was passed, being satisfied he took the note.

The thing sold was not real estate. The sale of it and the counter-letter were not required to be recorded in the conveyance office, where transfers of real estate and contracts of alienation relative thereto *alone* are to be part of the record. Such being the case, the plaintiffs were under no obligation to consult the records of that office, and registry therefore is not equivalent to notice and knowledge.

The idea that the plaintiffs are concluded from the fact that they voted at the meeting of creditors in the respite proceedings, can hardly be serious. It suffices to observe, if anything need be said, that they were their creditors for a paltry sum and had not yet acquired the note sued on.

The intervenor labors strenuously to show that the *mill* is not immovable property, and therefore not liable to be mortgaged. There can be no doubt that such is the law, but the plaintiffs do not claim a mortgage and it does not at all follow that the *mill* could not be affected or encumbered with a vendor's lien. R. C. C. 3227.

It is perfectly true that this lien is not created by consent, but springs by operation of law only. It is also incontestable that when once thus created, it continues to exist and attach, either to the movable or immovable property sold, unless it has been expressly abandoned.

The lien in this case, far from having been given up or relinquished, was, by the act of sale, explicitly declared to be retained to secure the payment of the note sued on and others which had been issued and have been retired.

There is therefore no reason why the plaintiffs should not be recognized as entitled to the vendor's lien, which they claim.

It is therefore ordered and decreed that the judgment appealed, as far as it allows plaintiffs the amount of the note sued on, with interest, cost and charges, be affirmed; that it be amended so as to allow the plaintiffs, further, vendor's lien and privilege on the "*Clipper Saw-mill*," to secure the payment of said amount; that in all other respects it be reversed and that the intervention be rejected, the costs in both courts to be paid by the appellees.