### No. 9910.

#### J. W. JACOBS VS. YALE & BOWLING.

Where an appellee files an answer to the appeal, wherein he seeks to increase the judgment in his favor, he waives his motion to dismiss the appeal for formal irregularities.

One who sells an immovable to another, with full warranty, and afterward has conveyed to him an outstanding interest in the property, thereby cures the defect in his original title, which enures to the benefit of his vendee.

If such outstanding interest is conveyed to the wife of the vendor, in community with him, it is the same as if conveyed to himself. Neither the wife or any vendee of his acquires any title to this outstanding interest in the property.

APPEAL from the Eleventh District Court, parish of Natchitoches. *Pierson,* J.

*Egan & Pierson,* for Plaintiffs and Appellants.

*W. J. McDonald* and *E. E. Buckner,* for Defendants and Appellees.

The opinion of the Court was delivered by

TODD, J. There are two appeals in this case, one from an order dissolving an injuntion on bond, and another from a judgment on the merits.

Except on the ground of want of jurisdiction *ratione materiæ,* embraced in one of the motions which we must notice on our own motion, we cannot consider these motions, since they were waived by the appellee's answer to the appeal, wherein they asked that the judgment be affirmed, and for $300 damages for a frivolous appeal.

We could not grant these damages, or even affirm the judgment unless we take cognizance of the appeal. We could not affirm the

judgment appealed from, and could not award the damages claimed except by a decree of this Court, and we could render no decree or judgment unless we recognized and maintained the appeal, and ignored the motion to dismiss.

The prayer of the petition is for the rescission of a sale, the recovery of $1675 paid on the price, and of $2040, the value of the improvements made by the vendee on the land sold, which shows plainly that this Court has jurisdiction of the cause.

The motion to dismiss appeal is therefore denied.

## ON THE MERITS.

Yale & Bowling, the defendant, to enforce a special mortgage securing the unpaid residue of the price of a tract of land, sold by them to the plaintiff, obtained an order for the seizure and sale of the property. The plaintiff enjoined the execution of this order, on the ground that Yale & Bowling, his vendors, were not the owners of one undivided half of the land sold, and that he (plaintiff) was about being evicted therefrom, through a suit then pending in another court, to that end. He asked that the sale be rescinded, and that Yale & Bowling be compelled to return him the part of the price he had already paid, and compensate him for the value of his improvements on the land.

The defense substantially is:

That the plaintiff is under no real danger of eviction, that the suit referred to, purporting to be instituted to evict him, is a fictitious proceeding, gotten up by the plaintiff and his father-in-law, confederating with him for the purpose of defeating the collection of the debt, and defrauding them out of the same.

The facts bearing on this controversy are substantially these:

The land mentioned was conveyed in December, 1871, by one John Barron to his brother, L. G. Barron, Sr. This sale was made after the death of the wife of John Barron, and the property had been acquired during the marriage of said Barron and wife, and belonged to the community resulting from their marriage. On the 8th of February, 1882, the property was mortgaged by L. G. Barron, Sr., to Yale & Bowling for $7000, and on the 29th of March following, was sold by Barron to Jacobs, the plaintiff, on terms of credit, the instalments of the price being evidenced by notes of the buyer.

On the 17th of April following, Jacobs reconveyed the property to Barron, and, on the same day, Barron transferred it to Yale & Bowling, in settlement of his indebtedness to them, and they then con-

veyed it to Jacobs for $3100, divided into two instalments of $1550 each. It is for the last instalment that the order of seizure and sale issued.

Jerome and L. G. Barron, Jr., purport to have conveyed to Mrs. L. J. Thompson, the wife of L. G. Barron, Sr., on the 4th of May, 1883, the undivided half of this land, claimed to have been inherited from their mother, Mary Barron, for the stipulated price of $800. The deed was passed in Texas, where the vendors lived at the time, and was procured by L. G. Barron, Sr., his wife, the deceased vendee, not being present.

In regard to this conveyance of the half interest, it is shown by the testimony of L. G. Barron, Jr., one of the alleged vendors, that no money was paid, that no consideration passed, but that, using his language, " He gave his uncle (L. G. Barron, Sr.), the deed, to cure the defect in the title which his father, John Barron, had made to him, L. G. Barron, Sr."

If it had been a real sale it would not have conveyed the property to Mrs. Barron, but to the community of which, Barron, the husband, was the head and master. And inasmuch as Barron had once sold this land to Jacobs and subsequently to Yale & Bowling, with full warranty, this conveyance which cured the defect in his original title from John Barron, enured to the benefit of his subsequent vendees, and therefore leaves the complaint of Jacobs in the present suit, in which he resists the demand of the defendants, Yale & Bowling, without any foundation whatever.

This undivided half interest purporting to have been conveyed to Mrs. Barron was subsequently conveyed to one E. H. Carter, of Texas; and this Carter is the nominal plaintiff in the petitory action alleged to be pending in the United States Court of Shreveport, La., and through which Jacobs fears eviction from the premises.

It is evident from the character of the conveyance to Mrs. Barron, that she had no title to the land, and could convey none to Carter. But Carter's testimony was taken and is in the record, from which it appears that he knows nothing about this alleged purchase by him. He states in substance that he personally never bought the land, had never seen it, and knew nothing of its value; that if there was a conveyance of the land to him, it must have been made with his agent at Shreveport; but if it was made, he, Carter, had never been apprised of it.

We are satisfied from these facts, and from other evidence in the record strongly corroborative, that this sale of an outstanding title in

the land, and a suit for its recovery, and the threatened eviction of Jacobs from it, is a fraudulent scheme gotten up by Barron, the father-in-law of Jacobs, to enable him to resist the payment of the price he obligated himself to pay Yale & Bowling for the property. We believe that Barron is the real person in interest, and Jacobs but a party interposed.

There is no reality or merit whatever in the defenses set up by Jacobs against the demand of Yale & Bowling, and the process taken out by them to enforce it. Such seems to have been the conclusion of the district judge and we are satisfied that he was right.

The judgment of the lower court is therefore affirmed with costs.