PRO-VOSTY, J.
The plaintiff, trustee of the bankruptcy of I. A. Hebert, finding that the defendant hank claimed to be owner and in possession of a steam shovel which Hebert, the bankrupt, who was a railroad earthwork contractor, had been using in his work up to the time of his bankruptcy, and had continued thereafter to use, and finding that, four days before the bankruptcy, the defendant bank had received from the Louisiana Western Railroad Company $4,747.36 earned by Hebert under a contract with that company, instituted this suit to recover said property for the bankrupt estate. The allegations are that the transfer of the shovel andi the payment of the money by Hebert to the defendant bank are null under section 60a of the bankruptcy act (Act July 1, 1898, c. 541, 30 S'tat, 562 [U. S. Comp. St 1901, p. 3445], as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1909, p. 1314]), because made after Hebert had become insolvent and within four months before ■ the bankruptcy; and because simulated, and in fraud of creditors, and giving an unfair preference to the defendant bank over the-other creditors. Plaintiff also claims rent for the shovel, at $150 per month, for all the time the defendant bank shall have had the shovel..
The defendant bank answered that Hebert never owned the shovel, but merely held it under one of those conditional leases by which the lessee is to become owner of the thing leased on final payment of the rent; and-that he did not transfer it, but merely returned it when he found that he would have-to go into bankruptcy and could not pay the-balance of $1,500 and interest still due upon it. In the alternative, in the event the said lease is held to have been a sale, the defendant, bank claims a vendor’s privilege for said balance of $1,500 and interest; and, in the same alternative, claims a further privilege for $638.74, for necessary expenses in repairing and preserving the shovel.
With regard to the $4,747.36, the defendant bank has averred that it received this, money from the Louisiana Western Railroad Company for account of Hebert, on May 16, 1907, by virtue of an assignment made on August 31, 1906, more than eight months before the bankruptcy, which was on May 20, 1907. By way of further defense, the defendant bank pleaded the prescription of one year in bar of the revocatory action, and the prescription of four months established by section 67e of the bankruptcy act, as amended February 5, 1903. In the alternative, it pleaded compensation or set-off; Hebert having been indebted to it in an amount far exceeding the said $4,747.36 at the time said sum was- received.
The trial court maintained plaintiff’s demand for the shovel, holding that the alleged lease was a sale. ‘ It allowed the claim of defendant for necessary repairs and other- *93 expenses, but compensated it by an equal allowance to plaintiff for tbe rental value of tbe sbovel. It rejected defendant’s claim of a privilege for $1,500 and interest as having been extinguished by compensation, or .set-off, with a like amount of the $4,747.36. It rejected plaintiff’s demand for the $4,747.36, sustaining defendant’s plea of compensation or set-off as to that part of said sum not compensated by the balance due on the purchase price of the shovel.
From this judgment plaintiff alone appealed, and only from that part of it rejecting the demand for the $4,747.36. Defendant answered the appeal, renewing the prayer of the answer filed in the lower court. The answer to the appeal was filed on May 14, 1909. On November 18, 1909, defendant moved to dismiss the appeal on the ground that, plaintiff having appealed only from that part of the judgment which was adverse to him, instead of from the judgment as a whole, there has really been no appeal, since it is not possible to appeal from merely a part of a judgment; and that, as a consequence, plaintiff must be held to have acquiesced in the judgment.
This motion to dismiss came too late, it having been filed after answer to the appeal. Shall v. Banks, 8 Rob. 168; Jacobs v. Yale & Bowlings, 39 La. Ann. 359, 1 South. 822; and numerous other cases unnecessary to be cited.
Plaintiff, in his turn, has moved to strike out defendant’s answer to the appeal, in so far as this answer seeks to renew the litigation over the ownership of the shovel, or over the existence vel non of a vendor’s privilege on the shovel, or over the claim for necessary expenses in repairs, etc. Plaintiff bases this motion to strike out on two grounds: First, that, no appeal having been taken by either party from that part of the judgment passing upon those issues, the said issues have not been brought up, and are not involved in the suit as it stands on appeal before this court. Second, that, as to said issues, the defendant has acquiesced in the judgment by proving in the bankruptcy court, as unsecured claims, the said alleged debts for which it is claiming a privilege.
Only the first of these grounds need be considered. The two demands of the suit— that in connection with .the steam shovel, and that in connection with the $4,747.36 — were distinctly divisible; in fact, were separate demands. They might, beyond all question, have been made the subjects of different suits. The demands being thus separate, the judgment passing upon them, and upon the demands incidental to them, was, in like manner, distinctly divisible; or, more properly, was two separate judgments in one. Plaintiff restricted his appeal, distinctly, to only-one of the demands; or, in other words, to one of the judgments. The effect of this was to put the other demands, or other judgment, out of the suit, for all the purposes of the present appeal. Hence the motion to strike out must be allowed, and the appeal restricted to the $4,747.36. That judgments thus divisible, or dual, may be divided for the purpose of appeal, must be considered settled in our jurisprudence. Succession of Calloway, 49 La. Ann. 968, 22 South. 225, and cases there cited.
Coming to the $4,747.36 payment, we do not find that it was a simulation. It was made in real extinguishment of a debt, and we find that the revocatory action does not lie against it, since the debt paid was past due, and the payment was in money. Civ. Code, arts. 1986, 2658. • The facts relevant to whether it was a preferential transfer under section 60a of the bankruptcy act, as having been'made within the four months next preceding the bankruptcy, are as follows:
Hebert and the defendant bank began doing business together in January, 1906. Their manner of dealing was this: Hebert would *95 draw Ills check upon the bank for the money he needed for carrying out his contracts. The credit side of the bank account would be kept up by crediting the proceeds of promissory notes which Hebert would execute in favor of the bank and the bank would discount, and also by crediting the sums which Hebert would earn under his contracts, and which, by virtue of a special clause inserted in the contracts, would be paid direct to the bank. On August 15, 190G, Hebert secured a contract with the Louisiana Western Railroad Company. In this contract the usual clause for payment direct to the bank was inserted. Fifteen days thereafter, on August 31, 1906, Hebert executed the instrument which is l>leaded in the answer as having transferred as of that date the moneys to accrue under said railroad contract. This instrument reads as follows:
“State of Louisiana, Parish of Calcasieu. Be it known, that:
“Whereas, I, Ignace A. Hebert, a resident of the parish and state aforesaid, am indebted unto the First National Bank of Lake Charles for moneys advanced to enable me to carry out a certain contract with the Louisiana Western Railroad Company, for the filling in of the Sabine Trestle, and for the balance due said Bank on the purchase price of a Lidgerwood Rapid Unloader and Steam Shovel, which said Unload-cr and Steam Shovel is now being used by me in the work for the Louisiana Western Railroad Company, in the sum of ten thousand dollars.
“Now, therefore, in order to secure said bank for the moneys due and advanced by it, and to be advanced from time to time as may be required in the performance of said work, I do hereby authorize and request the said Louisiana Western Railroad Company to pay to the said First National Bank of Lake Charles, from time to time, all moneys due and coming to me under said contract and such others as I may enter into with said company in the future, until notice from said bank and me, and until the discharge and satisfaction of my indebtedness to said bank.”
As a matter of fact, the only debt Hebert owed the bank at that date was the balance of $6,000 due on the notes given for the credit portion of the purchase price of the steam shovel and of the unloader mentioned in the said instrument, which notes the hank had acquired.
This instrument was duly notified to the railroad company, and, in accordance with it, the railway company paid the moneys in question to the defendant bank from time to time as they became payable; the said $4,747.36 being the final payment, and the whole aggregating $15,888.30.
Although the clause inserted in the railroad contract for the payment of the moneys direct to the defendant bank was not pleaded, or relied upon, in the answer, defendant seeks to invoke its aid in the argument. This cannot be done, because said clause was not pleaded, and objection was duly made to the reception in evidence of the contract containing it. Defendant, under the pleadings, must be confined to the instrument of August 31st hereinabove transcribed.
We do not understand defendant as contending that this instrument created a pledge; but that it operated a transfer; and we think it did.
“A contractor may, even before he has commenced the work called for by his contract, transfer the credit which will accrue ,to him from the performance of the work, for, as soon as the contract has been entered into, he has a conditional credit upon the person for whom he is to do the work.” Baudry-Lacantinerie et Saignat, De la Vente, No. 760, p. 690. See, also, Aubry et Rau, Vente, No. 359, p. 420; Guillouard, Vente, vol. 2, No. 748.
By said instrument Hebert transferred a proportion of this credit equal to his then existing debt and to the debt which he might contract thereafter for advances made to him to enable him to carry out his said contract with the railroad company.
The said instrument requires the railroad company to make payment direct to the bank until further notice from the bank., Had the debt to the bank been due at the date of this instrument, and had the future moneys in question been then payable to Hebert, there could be no question but that the credit of Hebert against the railroad company would have been fully and completely transferred to the amount specified;
*97 “It will not be disputed that a written order by a creditor, addressed to his debtor, directing him to pay to a third person a debt due to the former, accompanied by due notice to the debt- or, would comply with all the requirements imposed by our Civil Code (articles 2642 to 2654) for the valid giving of title, delivery, and complete assignment of the credit or incorporeal right referred to in the order.” Gordon & Gomilla v. Müchler, 34 La. Ann. 604-608.
The fact that the debt to the bank which formed the consideration of the transfer was in no part mature, and was in part not yet in existence, can make no difference. There is nothing to stand in the way of the validity of an agreement by which a debtor transfers to his creditor á credit which is to mature at some future time, in satisfaction of a debt not yet mature, or even not yet in existence, but which will be mature, or be in existence and payable, by the time the transferred credit itself matures and is payable. In such a case the agreement goes into immediate operation for that part of the debt already existing, and it goes into operation for that part of the debt to be thereafter created as the latter debt springs into existence. A. agrees to advance to B. certain moneys, and B. agrees that, as the moneys are advanced, a like amount of a credit which he (B.) has against 0. is to be considered as transferred to A., and O. is duly notified of this arrangement, and accedes to it. We can discover no legal obstacle to the perfect validity of such an arrangement; and such was the tenor and effect of the agreement evidenced by the said instrument.
To the extent that the consideration of the transfer was the debt of $6,000 already existing at the date of said instrument, the transfer was a giving in payment. To the extent that its consideration was the advances thereafter to be made, it was in the nature of a sale. This was so because the transfer was made in anticipation of the advance; so that no time could intervene between- the advance and the transfer in satisfaction, or consideration of it The sale was conditional. This was so because the credit was conditional, and because the bank did not accept it such as it was, good or bad, in final satisfaction, but accepted it subject to the condition of its proving to be good. This condition is not expressed, but necessarily results from the situation as a whole.
To the extent that the transfer was a giving in payment — that is to say, to the extent that the already existing debt of $6,000 was its consideration — it went into effect as soon as delivery had been accomplished by notification to the railroad company. To the extent that it was a conditional sale — that is to say, to the extent that the future advances were its consideration — it went into effect at the date the advances were made, since notice of the transfer had been given by anticipation to the railroad company. Whether these advances were made within or without the four months next preceding the bankruptcy is immaterial, since the transfers of which they formed the consideration were not payments,' but were in the nature of sales, and, as such, were not amenable to the prohibition of section 60a of the bankruptcy act. They did not give any preference to one creditor over another, but were mere transactions, in due course of business, by which Hebert transferred to the defendant bank a part of his credit against the railroad company in consideration of a corresponding amount paid him cash by the defendant bank; and the bank in its turn accepted the transfer, subject to the condition of the credit proving good.
However, the said instrument does not provide that any and all future advances which the defendant bank may make to Hebert are to be covered by a transfer of a corresponding amount of the said credit, but only those particular advances made with special reference to the particular contract of August 15, 1906, and to enable Hebert to carry out said *99 contract. What these advances were the record does not enable ns to ascertain. By whatever amount the $lo,88S.36 received by the defendant bank may exceed the $6,000 already due on August 31, 1906, and the advances made with special reference to the railroad contract of August 15, 1906, the defendant bank is not entitled to preference over the other creditors of Hebert; and by the amount of any such excess the delivery of said $4,747.36 to the defendant bank was preferential and voidable.
The burden of proof was on the defendant bank to establish the amount of said advances; but we think that, in the interest of justice, the' case should be remainded to afford an opportunity to make such proof.
The thing which constituted the object of the said transfer was not the future moneys themselves which were to accrue under the railroad contract. Had the transfer been of the future moneys themselves, there could have been no actual delivery until, by having been earned, these future moneys had come into existence (for, a nonexisting thing cannot be actually delivered); and, as a consequence, the effect of the transfer would until then have been confined strictly to the parties, and the rights of third persons would not have been in the slightest degree affected. The Code so expressly provides. Oiv. Code, art. 1922. But the thing which constituted the object of the transfer was the credit which sprang into existence the moment the contract with the railroad was entered into and became binding on the railroad. This credit was a presently existing thing which could be sold and delivered. It was a distinct and separate thing from the future moneys, in the same way that the hope of a future crop is a distinct and separate thing from the future crop itself, and either may form the object of a sale. See Losecco v. Gregory, 108 La. 648, 32 South. 985.
•Passing to the plea of compensation, or set-off: If this $4,747.36 can be considered as having been deposited in the bank by Hebert to be held for him by the bank subject to his check, in such way that the bank became his debtor for the amount, and was thus his debtor at the time of the bankruptcy — compensation, or set-off, took place pro tanto between that debt and the debt of Hebert to the bank — and there was not a preferential transfer of money. Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380. But if the money was received by the bank, not as a deposit, but as a payment, there was a preferential transfer of property. Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171. In the first of these two cases the court refers to the second, and distinguishes it as we have here done.
For contending that the transfer of the money was by way of deposit and not by way of payment, defendant founds itself upon the fact that the money was credited to Hebert’s bank account, and that this was done in accordance with the mode in which the parties had been carrying on their business theretofore.
True, the $4,747.36 was thus credited at the time it was received; but the account was simultaneously debited with a $4,800 note past due and unpaid, so that, the entering of the credit as a deposit was manifestly a mere matter of form, and the amount was at no time on deposit subject to the check of Hebert. As was remarked by the Supreme Court of the United States in Rector v. City Deposit Bank, 200 U. S. 405, 26 Sup. Ct. 289, 50 L. Ed. 527, a somewhat similar case:
“The form of the transaction does not affect its nature.”
The reality and substance of the matter is that this money was not deposited at all by Hebert, but was paid by the railroad company under instructions from Hebert in “discharge and satisfaction of my indebtedness to said bank.” That the money was thus re-
*101 ceived as a payment, or as money theretofore transferred to the defendant hank, and not as a mere deposit subject to check, is a patent fact; indeed, is testified to by the cashier of the defendant hank; nay, is averred in the answer, and argued in defendant’s brief.
The inconsistency between this plea of compensation, or set-off, and the other contention that the agreement of August 31, 1906, was a transfer, has not escaped our attention, but is unimportant from the view we have taken of the case.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside in so far as it rejected plaintiff’s demand for the $4,747.36 in question in this suit, and that this case be remanded for further trial in accordance with the views expressed in this opinion. Defendant to pay the costs of this appeal; the costs of the further trial to abide the result of the further trial.