No. 872

First Circuit

GENERAL CONTRACT PURCHASE CORP. v. BARROW
(JACKSON, Intervener)

(October 7, 1931. Opinion and Decree.)
(December 8, 1931. Rehearing Refused.)
(February 1, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

Jos. A. Loret, of Baton Rouge, and C. V. Ratcliff, of Shreveport, attorneys for plaintiff, appellant.

Oliver. Bouanchaud, of Baton Rouge, attorney for defendant, appellee.

LeBLANC, J. The issue in this case is between the intervener and the plaintiff. The suit originated in a foreclosure proceeding brought by the plaintiff on a chattel mortgage bearing on a Chrysler automobile which was seized while in the possession of the intervener, T. A. Jackson. The latter claims that the sale under which the pretended mortgage arose, was never completed for lack of delivery of the car to the defendant, Barrow, and consequently the mortgage rights did not attach. The issue seems to hinge on the question of delivery. Evidently the trial judge concluded that there must not have been a sale to the defendant as he at first, after trial of a rule for injunction, granted an order arresting the sale, and later, on trial of the intervention on the merits, rendered judgment in favor of the intervener, decreeing him to be the owner of the automobile.

The proof seems to favor the contentions of the intervener and to sustain the judgment of the lower court.

On July 26, 1930, the defendant appears by an act of sale to have bought a Chrysler automobile described by manufacturer's serial and motor number, from the Watson-Ledet Motors, Inc., of Baton Rouge. A part of the purchase price was paid cash, and eighteen notes of $80 each were given to represent the balance due. On that day, the automobile involved in the sale was in New Orleans, in the hands of the George W. Stem Motor Company, distributors for that make of automobile. As a matter of fact, the purchase price of the automobile had not yet been paid by the Watson-Ledet Motor Company, Inc., to George W. Stem Motor Company. On July 28, 1930, J. B. Noland, president of the Watson-Ledet Company was in New Orleans, where he did pay the George W. Stem Company for three Chrysler cars, the eight-cylinder car involved in this suit and two six-cylinder cars. He had ordered three of his employees, Barrow who was a salesman, a man named Bourgeois, and a negro to go to New Orleans to drive the three cars back to Baton Rouge. Barrow happened to drive the eight-cylinder car himself, and it was the taking of the car and driving it under such circumstances that plaintiff contends constituted a delivery.

Noland, who had been trying to sell this very car to Jackson for a few days prior to this, reached Baton Rouge a few hours before Barrow. He succeeded in closing the deal with Jackson that afternoon, and on Barrow's arrival, had him to agree that the written act of sale, which had been drawn and signed and the notes given in connection therewith, would be destroyed. At Noland's special request Jackson agreed to let the car remain on display on the floor room of the Watson-Ledet Company for a few days, and it was on the Friday following, August 1, 1930, that the car was delivered to him.

Noland never carried out the agreement to destroy the Barrow sale and notes. The notes were transferred to the plaintiff, who, claiming to be a purchaser in good faith and holder in due course, instituted

this proceeding to enforce their collection. Noland had absconded at the time of trial of the rule and the record is without a word of evidence from him.

Jackson's good faith in purchasing the car is not questioned. There is no testimony to indicate that he had actual notice of the transaction between Watson-Ledet Motor Company and Barrow, and the object of the sale being a movable, the law did not require him to look up the public records as is the case when real estate is transferred. McCan & Sons v. Alfred Bradley, 38 La. Ann. 482. The Chattel Mortgage Law, Act No. 198 of 1918, did not have the effect of changing the law relative to the sale of movables, which is not required to be in writing. Civ. Code, art. 2441.

. . Jackson, being a bona fide purchaser without notice, and the car being in his possession, could not have his rights of ownership affected by the mortgage securing the notes held by plaintiff, unless the sale to Barrow under which the mortgage arose was made valid and complete by delivery of the car.

Article 1922 of the Revised Civil Code provides as follows:

"With respect to movable effects, although by the rule referred to in the two last preceding articles, the consent to transfer vests the ownership of the property in the obligee, yet this effect is strictly confined to the parties until actual delivery of the object. If the vendor, being in possession, should, by a second contract, transfer the ownership of the property to another person, who gets the possession before the first obligee, the last transferee is considered as the owner, provided the contract be made on his part bona fide, and without notice of the former contract."

The Supreme Court has invariably held that a sale of movables, not accompanied by delivery, is void as to third persons. Jorda v. Lewis, 1 La. Ann. 59; Tanneret v. Edwards, 18 La. Ann. 606; Williams v. Triche, 107 La. 103, 31 So. 926; Cox v. First National Bank, 126 La. 99, 52 So. 227; Brooklyn Cooperage Co. v. Cora Planting & Mfg. Co., 137 La. 807, 69 So. 195.

"What shall be considered a delivery of possession is determined by the rules of law, applicable to the situation and nature of the property." R. C. C., art. 1924.

In Fouché v. Stewart Bros. & Co., 32 La. Ann. 215, the court holds that "delivery is a matter of law, to be inferred from an established state of facts."

Bearing this principle in mind, what are the established facts regarding delivery of the car in this case to Barrow?

We find that he had frequently been sent to drive back to Baton Rouge the cars which Watson-Ledet Motor Company bought from George W. Stem Motor Company, of New Orleans. It seems that he was always sent to drive back the eight-cylinder cars. On the occasion in question before us, he was ordered by Noland, with two other employees, to go to get three automobiles. His instructions were not different from those given to the other two and they were that they should drive back, not any particular car, but three Chrysler automobiles which Watson-Ledet Company had bought from the distributor. There is no intimation that Barrow was sent to get the car he had signed the sale for, and the fact that he got into that one and drove it back was merely incidental. The three cars happened to be lined up on the street, the eight-cylinder car being first in line. The two other drivers were unaccustomed to driving in New Orleans, and it was at their request that he lead the way out of the city, that he took the first car in line. He never had any intention of accepting delivery of the car at the moment, as it

is undisputed that the Watson-Ledet Motor Company never delivered new cars to their customers until they had been carefully gone over and checked up by their mechanics at their place of business in Baton Rouge, and that is exactly what was done with the car Barrow drove on this occasion. He turned it in to the shop for checking up directly on his return to Baton Rouge, and before it was returned from there it had been sold to Jackson, to whom it was delivered subsequently, and Barrow never had anything more to do with it.

Under such facts, we hold that there was no delivery of the automobile to Barrow and consequently no sale as far as Jackson, a third party, was concerned.

As the sale to Barrow was void as to Jackson, it follows that the mortgage which is an accessorial right only, dependent upon the sale, must fall. Article 3284, Rev. Civ. Code, reads:

"The mortgage is accessory to a principal obligation which it is designed to strengthen, and of which it is to secure the execution."

Article 3285:

"Consequently, it is essentially necessary to the existence of a mortgage, that there shall be a principal debt to serve as a foundation for it.

"Hence it happens, that in all cases where the principal debt is extinguished, the mortgage disappears with it.

"Hence also it happens that, when the principal obligation is void, the mortgage is likewise so; this, however, is to be understood with certain restrictions which are established hereafter."

None of the restrictions referred to apply here, and we hold therefore that the mortgage, like the sale, was void.

The judgment of the district court is correct, and is affirmed.