## AMERICAN RICE GROWERS' CO-OP. ASS'N v. LAKE CHARLES RICE MILLING CO. et al.

### No. 1184.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1933.

C. R. Liskow, of Lake Charles, for appellant.

McCoy, Moss & King, of Lake Charles, for plaintiff.

917

E. R. Kaufman and Pujo, Bell & Hardin, all of Lake Charles, for appellee.

MOUTON, Judge.

It appears that plaintiff, the American Rice Growers' Co-operative Association, was in debt to the Lake Charles Rice Milling Company on August 20, 1932, when it received the following letter from the latter company:

"We have this day credited your account with $2492.27, being the amount of prepaid ocean freight due Lykes Brothers Steamship Company on shipments made for your account, from time to time, on your account with us. This will authorize you to pay Lykes Brothers Steamship Company the amount named out of the proceeds of collections for rices shipped, and charge our account."

The rice growers' association at the time it received that letter from the rice milling company did not know in what amount it was indebted to that company. About ten days after plaintiff company had received the letter, the rice milling company went into the hands of a receiver. Later, plaintiff, the rice growers' association, filed a petition in court alleging that at the time it received the letter from the rice milling company, August 20, 1932, it was indebted to that company in the sum of $1,726.11, and prayed that this amount be deposited in the registry of the court to be paid to the receivers of the Lake Charles Rice Milling Company or to the Lykes Brothers Steamship Company. This amount was deposited with the clerk, as ordered by the court.

The plaintiff company has no interest in the outcome of this suit, the contestants being the receivers of the rice milling company and the Lykes Brothers Steamship Company.

It is admitted that on August 20, 1932, when the letter, above reproduced, was written, the rice growers' association, the rice milling company, and the Lykes Brothers Steamship Company knew that the Lake Charles Rice Milling Company was insolvent. At that time the Lake Charles Rice Milling Company was in debt to the Lykes Brothers Steamship Company in the sum of $5,585.16 on a demand note made June 30, 1932, in favor of that company.

In the letter, to which we have referred, the rice growers' association was authorized by the rice milling company, its creditor, to pay $2,492.27, not knowing at that time the amount that was due, and of which its debtor, the rice growers' association, was also unaware, as clearly appears by the deposit of $1,726.11 later deposited in the registry of the court, and which it is not disputed was the total amount of the indebtedness of the rice growers' association. This amount of $2,492.27 had, a few days before this letter was written, been applied by the Lykes

Brothers Steamship Company on its note of $5,585.16, which it held against the Lake Charles Rice Milling Company.

Article C. C. art. 1984 reads, as follows:

"Every contract shall be deemed to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances, and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors of the obligor."

The Lykes Brothers Steamship Company knew, when this letter was written to the rice growers' association by the Lake Charles Rice Milling Company, that the latter company was then in insolvent circumstances and necessarily realized that as a creditor it was getting an advantage over the other creditors of its insolvent debtor. As such was then the situation, the contract entered into between the Lykes Brothers Steamship Company and the rice milling company must be deemed to have been made in fraud of creditors under the provisions of that article of the Code. It must be so held, unless the steamship company is entitled to protection from the operation of article 1984, C. C., by virtue of the provisions of article 1986, C. C., wherein it is provided that:

"No sale of property, or other contract made in the usual course of the party's business, nor any payment of a just debt in money, shall be affected by virtue of any provision in this section, although the party was in insolvent circumstances, and the person with whom he contracted, or to whom he made the payment, knew of such insolvency."

On August 14, 1932, about six days before the letter was written, we find written on the reverse side of the demand note of $5,583.16, then due the steamship company by the Lake Charles Rice Milling Company, the following: "$2,492.00. Paid by assignment of account of Amer. Rice Growers Co-op. Ass'n and Chalkley Pool." It is shown that this entry on the note was made under the direction of Rader, an employee of the steamship company who was handling this transaction. It therefore appears that prior to the writing of the letter, an assignment of the account due by the American Growers' Association had been made to the Lykes Brothers Steamship Company. The letter, however, was written in a way to indicate that the rice growers' association was simply directed to pay $2,492.27 it had on hand for the rice milling company. This letter was deftly drawn.

It may be stated at the outset that this payment on the note was of a just debt and in that respect not objectionable under the provisions of article 1986, Civil Code, above reproduced.

Hence, the question to which we must direct our attention is as to whether the con-

tract was "made in the usual course of the party's business" and whether this payment was "in money," as required by C. C. art. 1986; also by C. C. art. 2658, where the Code uses this positive, unequivocal language, quoting: "But the law forbids to give in payment to one creditor, to the prejudice of the others, any other thing than the sum of money due."

In one of the earliest cases on this subject, Robbins v. Leverich et al., 6 La. 340, the insolvent was engaged in the trade of a retail grocer. The sales had been made by the insolvent of articles for the accommodation of his customers. It was there said that the court was of the opinion "that such transactions, in the usual course of business, are not liable to be annulled as fraudulent, under the insolvent laws of the state."

It will be noted that the article of the Code on this subject uses the following language: "in the usual course of the party's business."

There is nothing to indicate in the instant case that the assignment of this account by the Lake Charles Rice Milling Company had any connection whatsoever with the usual course of the business in which it was engaged.

The next question is: Was the payment by the Lake Charles Rice Milling Company to the steamship company made "in money," as required by article 1986, C. C.?

The very writing on the reverse side of the note, to which we have referred, says: "Paid by assignment of account American Rice Growers Association." Obviously, this was an assignment of the claim of the Lake Charles Rice Milling Company which it had against the rice growers' association. The fact is that the rice milling company did not then know how much was due it by the rice growers' association, which was subsequently shown to be $1,726.11 instead of $2,492.27.

Article 2658, C. C., says emphatically that the law forbids the giving in payment to one creditor, to the prejudice of the others, any other thing than the "sum of money due."

Here, the sum of money which was then due to the Lake Charles Rice Milling Company by the rice growers' association was not known by either of the two companies. Hence, at that time it would have been impossible for the rice milling company to have made such a payment if it so desired. The rice growers' association had no sum of money in its hands for the rice milling company which could be drawn against to be transferred to the steamship company. It was the debtor of the rice milling company in some amount not yet ascertained, and the assignment made to the steamship company by the rice milling company was merely a transfer of a part of the $2,492.27, the amount it was claiming against the rice growers' association.

In 6 La. 340, above referred to, in which a case of this character was reviewed, the court said:

"The debt had been provided for, not by a payment in money, but by assignments of debts due to the insolvent, which, independently of his transaction, would have gone into the mass. We think this is giving a preference to one creditor, which is reprobated by law."

Likewise, in this case the account of the American Growers' Association assigned by the rice milling company to the steamship company should return to the mass of the assets of the rice milling company for the benefit of its creditors, as the law directs.

Counsel for the Lykes Brothers Steamship Company refers to the case of Cox v. First National Bank of Lake Charles, 126 La. 88, 52 So. 227, in support of his contentions. In that case in referring to the debt in question, the court said the payment was in money; that the transactions were in the nature of sales, and were in due course of business.

The situation is entirely different in the instant case, as appears from the reasons hereinabove given which require no repetition.

The district judge correctly decreed that the receivers of the Lake Charles Rice Milling Company were entitled to the possession of the $1,726.11 deposited with the court, and properly rejected the demand of Lykes Brothers Steamship Company.

Judgment affirmed.