E. Cecil WILEY, Plaintiff-Appellee,

v.

**PUBLIC INVESTORS LIFE INSURANCE COMPANY, Defendant-Appellant.**

No. 73-2971.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1974.

---

Richard E. Lee, Pineville, La., for defendant-appellant.

Irving Ward-Steinman, Alexandria, La., for plaintiff-appellee.

Before COLEMAN, CLARK and GEE, Circuit Judges.

GEE, Circuit Judge:

Defendant, Public Investors Life Insurance Co., asserts on appeal that the district court erroneously construed and applied controlling principles of bankruptcy law in entering judgment for plaintiff, Trustee in Bankruptcy of the Estate of Horace William Keeling, Jr. We agree and reverse.

The facts are not in dispute. Mr. Keeling was employed by Public Investors. Under his contract of employment, executed on January 1, 1966, he retained an interest in all renewal premiums paid on policies of life insurance which he sold while in the employ of Public Investors. As long as the policy holders continued to pay their premiums, Keeling would receive his commissions from those premiums. At the time of his adjudication as a bankrupt Keeling owed Public Investors $7,040.30, which represented an advance draw on his future commissions and which was evidenced by his promissory note. Paragraph 21 of Keeling's contract of employment with defendant provided as follows:

The Company may offset against any claim for compensation hereunder, or against any monies due the Second Party, whether arising under this agreement or otherwise, any debt or debts owed by the Second Party to the Company or to other persons representing the Company whether arising hereunder or otherwise, Second Party hereby grants to the Company a first and prior lien on any commissions, bonuses, or service fees provided herein, and any monies that from time to time may become due him from it under this agreement, or otherwise, to secure such indebtedness. Should an extension of time for the payment of any obligation of the Second Party be granted by the Company the extension shall not in any way affect any of the provisions of this agreement or impair any liability of the Second Party.

Bankruptcy proceedings were filed on behalf of Keeling on November 2, 1970. Relying on Paragraph 21, Public Investors continued, despite Keeling's bankruptcy, to offset all renewal commissions due him against the indebtedness due the company. The Trustee sued to recover all sums so withheld, both before and after bankruptcy, as well as the present value of future commissions, on the theory that any withholdings were voidable preferences and that title to

these commissions, whether accrued or not, vested in the Trustee on the date of bankruptcy. Public Investors replied that the Trustee could have no greater right to the commissions than Keeling, and that Keeling had no right at all to them until his debt to Public Investors was satisfied.

■ Section 70a of the Bankruptcy Act, 11 U.S.C. § 110(a), governs the title acquired by the Trustee in the estate of the bankrupt.[1] The district court correctly founded its analysis of the dispute upon the general proposition that, for § 70a purposes, state law defines the property of the bankrupt and regulates any passage of title to a transferee, while the Bankruptcy Act controls passage of title to the Trustee and is paramount in the event of conflict. See 4A Collier on Bankruptcy § 70.06, at 81 (1971 ed.). But when the court turned to state law it took the wrong path.

Below, as on this appeal, Public Investors principally relied on the case of Mutual Trust Life Insurance Co. v. Wemyss, 309 F.Supp. 1221 (S.D.Maine 1970). There, in resolving a conflict essentially identical to the one which faces us, the court held:

It is thus clear that under his contract Wemyss [the bankrupt] had no right ·to receive any renewal commissions until his outstanding indebtedness to the company [Mutual] was satisfied in full. Although under the Bankruptcy Act the Trustee succeeded to any right of action Wemyss had under the contract, it is axiomatic that "[i]n all cases where the trustee seeks to as-

sert or enforce the bankrupt's right of action against another, he stands in the bankrupt's shoes regarding defenses to the action." 4A Collier ¶ 70.28[1] at 385. (footnote omitted) The effect of Section 70, sub. a(5) and (6) of the Bankruptcy Act was to vest in the Trustee as of the date of bankruptcy whatever right Wemyss then had to receive future renewal commissions under his contract. But the Trustee's right can rise no higher than Wemyss' right at that time, and the only right of Wemyss under the contract was to be paid any renewal commissions which might remain after his indebtedness to Mutual was satisfied. As Mutual points out, the contract itself defines the asset, and the Trustee can claim no more than the "net proceeds" of the contract, i. e., any excess of commissions remaining after Mutual has been reimbursed in full.

309 F.Supp. at 1231.

■ Despite the persuasive logic of the *Wemyss* opinion, the court below felt that the *common law* therein expressed was not relevant to its task of finding and construing the applicable *Louisiana* law. After recognizing that state law determines the property rights of the bankrupt, the district court confined its attention to Louisiana Civil Code Articles 2207 through 2216, which deal with "compensation," and which are at least in potential conflict with the federal doctrine of "set off" expressed in Section 68a of the Bankruptcy Act, 11 U.S. C. § 108(a).[2] The applicable body of

---

1. 11 U.S.C. § 110(a) provides in revelant part:

The trustee of the estate of a bankrupt . . . shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred .or which might have been levied upon and sold under judicial process against him, or otherwise seized, im-

pounded, or sequested . . . (6) rights of action arising upon contracts. . . .

2. The "set off" provisions of Section 68a furnish an alternative basis upon which Public Investors may retain renewal commissions accrued prior to bankruptcy. However, the "mutuality" requirement of 68a is not met for those commissions collected subsequent to bankruptcy. See *Wemyss*, 309 F.Supp. at 1232 n. 18, and cases cited therein. Therefore, with respect to all commissions, whenever accruing, our analysis follows the more basic rule that under 70a only that which belongs to the bankrupt passes to the Trustee.

Louisiana law is that which governs the right of an individual to encumber his future interest in commissions not yet accrued.

■ Any property right transferred prior to bankruptcy in accordance with state law is not part of the bankrupt's estate. As stated in the majority opinion of the Supreme Court in an analogous case, Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962):

Ownership of property rights before bankruptcy is one thing; priority of distribution in bankruptcy of property that has passed unencumbered into a bankrupt's estate is quite another. Property interests in a fund not owned by a bankrupt at the time of adjudication, whether complete or partial, legal or equitable, mortgages, liens, or simply priority of rights, are of course not a part of the bankrupt's property and do not vest in the trustee. The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors. (footnote omitted)

371 U.S. at 135–136, 83 S.Ct. at 234.

■ In the present case, Keeling expressly granted the company a prior lien on any commissions that become due him under his contract of employment. If Louisiana recognizes such an assignment, then that ends the matter. The Trustee's claim can rise no higher than Keeling's.

■ Turning to Louisiana law, we find that the right to carve out and transfer a prior claim to a future interest is, at least in this respect, as well established under the civil as under the common law. In Cox v. First National Bank, 126 La. 88, 52 So. 227 (1910), the Supreme Court of Louisiana considered a dispute very similar to ours. A railroad contractor, in order to obtain operating capital, assigned to a bank all money which would become due from the railroad under his construction contract until his indebtedness to the bank was satisfied. Under the agreement, the railroad paid the money directly to the bank to secure loans then due or thereafter to be advanced by the bank. When the contractor went bankrupt, the trustee sued to recover as an unfair preferential transfer a sum paid by the railroad to the bank within four months of bankruptcy. The court pointed out that the assignment of future earnings was made eight months prior to bankruptcy. It stated:

The fact that the debt to the bank which formed the consideration of the transfer was in no part mature, and was in part not yet in existence, can make no difference. There is nothing to stand in the way of the validity of an agreement by which a debtor transfers to his creditor a credit which is to mature at some future time, in satisfaction of a debt not yet mature, or even not yet in existence, but which will be mature, or be in existence and payable, by the time the transferred credit itself matures and is payable. In such a case the agreement goes into immediate operation for that part of the debt already existing, and it goes into operation for that part of the debt to be thereafter created as the latter debt springs into existence. A. agrees to advance to B. certain moneys, and B agrees that, as the moneys are advanced, a like amount of a credit which he (B.) has against C. is to be considered as transferred to A., and C. is duly notified of this arrangement, and accedes to it. We can discover no legal obstacle to the perfect validity of such an arrangement; and such was the tenor and effect of the agreement evidenced by the said instrument.

52 So. at 230.

The Louisiana Supreme Court went on to explain that the transfer was not of the future earnings themselves but of the right to them. It treated the agreement as a "conditional sale"—of credit against the railroad for future earnings in exchange for future advances. The court, therefore, held that the trustee was entitled to funds received by the

bank from the railroad only to the extent that they *exceeded* the advances made by the bank to the contractor under the agreement.

*Cox* representing the Louisiana law, we hold that the Trustee, standing as he does in the bankrupt's shoes, has no right to the renewal commissions until Keeling's indebtedness to the company is satisfied.[3]

Reversed.

3. Since the bankrupt, Keeling, is not a party, we cannot and expressly do not adjudicate any claim which *he* might have—in light of Kokoszka v. Belford, —— U.S. ——, 94 S.Ct. 2431, 40 L.Ed.2d —— (1974) ; Lines v. Frederick, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), and Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1965)—to commissions accruing after bankruptcy and after his debt to Public Investors is satisfied.