No. 3274

Second Circuit

JONES v. LONGINO
MRS. MURPHY, INTERVENER

(March 12, 1929. Opinion and Decree.)

James W. Jones, Jr., of Natchitoches, attorney for plaintiff, appellee.

Rusca and Cunningham, of Natchitoches, attorneys for intervener, appellant.

ODOM, J. This is a controversy over the ownership of two mules seized as the property of Harrison Longino under a writ of fieri facias issued in the suit of James W. Jones, Jr., vs. Harrison Longino. When the mules were seized, opponent, Mrs. Murphy, filed with the Sheriff an affidavit setting out that she owned the mules. The Sheriff called upon the seizing creditor for an indemnity bond, which was furnished, and the Sheriff advertised the mules for sale. Mrs. Murphy then intervened by way of third opposition, claiming ownership of the property, and alleged that she had purchased them from her brother, Harrison Longino, for the price of $150.00, which she had credited on a $200.00 obligation that was due her for money advanced to him to employ counsel to defend him in a criminal prosecu-

tion. She alleged that said mules were delivered to her through her brother, Jasper Longino, whom she designated to accept them for her, and, that being unable to use or sell the mules, she had permitted her brother, Harrison Longino, from whom they were purchased, to retain possession of them. She prayed for judgment decreeing her to be the owner of the mules and for a rule on the seizing creditor and the Sheriff to show cause why a restraining order should not be issued prohibiting the sale.

The seizing creditor answered, admitting the seizure of the mules, but denying that Mrs. Murphy, the intervener, is the owner of them and set up that Mrs. Murphy and the seized debtor had entered into a fraudulent collusion and conspiracy to defeat his seizure. On final trial, there was judgment against Mrs. Murphy, denying her application for an injunction and rejecting her demands. From this judgment, she has appealed.

### OPINION.

The mules in controversy were seized by the Sheriff while in the possession of the judgment debtor, Harrison Longino. Mrs. Murphy alleged, and, as a witness, testified that at some time in 1926, her brother, Harrison Longino, became indebted unto her in the sum of $200.00, and that, at the time, he owned two mules; and that later on she purchased the mules for the price of $150.00, which amount was credited on said debt.

If it be conceded that there was an agreement between Mrs. Murphy and her brother that she take over the mules, it is perfectly apparent that there was in fact no sale, but a giving in payment.

"The giving in payment is an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due." C. C. art. 2655.

The testimony convinces us, as it did the District Judge, that there was an understanding between Mrs. Murphy and her brother to the effect that she should take the mules at a fixed price which was to be credited on the debt. This being a giving in payment, it was necessary that there be actual delivery of the mules to Mrs. Murphy, in order to affect the rights of third parties. .

"The giving in payment differs from the ordinary contract of sale in this, that the latter is perfect by the mere consent of the parties, even before the delivery, while the giving in payment is made only by delivery." C. C. art. 2656.

The essentials of a giving in payment are an existing debt, just valuation and delivery. People's National Bank vs. Voorhies, 134 La. 303, 64 So. 120; Hughes vs. Mattes et al., 104 La. 218, 28 So. 1006.

Therefore, the material point to be determined in this case is whether there was in fact a delivery of the property to Mrs. Murphy. On this point, we find, after careful consideration of the testimony, that there was in fact no delivery. Mrs. Murphy testified that she had not at any time had personal possession of said property, but she alleged and testified that the mules were delivered to her brother, Jasper Longino, for her. The testimony on that point is by no means satisfactory. She testified that in the month of December, 1926, shortly after she acquired the mules from her brother, she employed Frank Laurent to carry the mules from where her brother, Harrison Longino, lived to the city of Natchitoches, about twenty miles away, and there deliver them to Jasper Longino. Laurent testified that he

did as requested, but stated that he delivered them in the month of December, 1927, —a year later than Mrs. Murphy said she had acquired them. He further stated that when he carried the mules to Natchitoches, he hitched them to a wagon at the rear of Jasper Longino's residence, and there left them. Laurent further testified that at the time he delivered them, he talked with both Jasper Longino and his wife, Mrs. Jessie Longino. Mrs. Longino, called as a witness, testified that she knew nothing of such delivery and, while she at times contradicted herself, we think her testimony is clear that she did not recall seeing the mules or the conversation which Laurent says he had with her and her husband. Jasper Longino was not called to the stand, and no reason is suggested why. As already stated, the mules were seized in the hands of Harrison Longino, and the testimony fails to show how or when they got back into his possession.

Lestan Lemoine, who knew Harrison Longino and was a neighbor to him, testified that if the mules had ever been taken out of the possession of Harrison Longino and carried to Natchitoches, he knew nothing about it. There is also some testimony in the record tending to show that Harrison Longino had made statements to the effect that he always made arrangements to protect his property when seized or about to be seized by his creditors.

The parties have failed to show delivery. We find in the record the written opinion of the Judge of the lower court in which he reviews the testimony and states his conclusions on the question of the delivery of the animals, which is as follows:

"Both Mrs. Murphy and Longino testify there was a tentative agreement of some kind to farm together during the year 1927. Just how these operations were to be conducted does not seem to have been agreed upon. At any rate, the two mules now in contest were then owned by Longino.

"It is said that Mr. Walter Dunkelman had offered to buy them from Longino, his offer being $150.00. This was communicated to Mrs. Murphy, and, rather than see him sell the mules for this price to another party, she agreed to give Longino the same price, it to go as a credit upon her loan of $200.00, which was acceptable to Longino and the sale made. It is not shown just why Longino should care to sell the mules to other parties, in view of the fact that he was proceeding with his arrangements to farm, either with his sister, Mrs. Murphy, or upon his own responsibility.

"However, there is some corroboration of there having been a sale to Mrs. Murphy, by Mr. Sompayrac, who testified that he discussed buying the mules during the early part of 1927, and was informed that they belonged to Mrs. Murphy and he would have to deal with her. This was at a time unsuspicious and I accept these statements as true. They were not sold to Sompayrac, however, and Harrison Longino continued in possession of the mules and worked them during the year 1927, and was still in possession and working them in the early part of the present year when they were seized.

"Mrs. Murphy testifies that after her brother leased a place for one year, 1927, the surroundings were not satisfactory to her and she declined the idea of farming with him.

"We hold that there was an agreement and understanding between Mrs. Murphy and Longino to sell and buy these mules for the price and sum of $150.00. The more serious question is on the question of delivery, since in order to defeat the seizure made there must be shown to have been a delivery to Mrs. Murphy previous to the seizure.

"Mrs. Murphy testifies, and she is corroborated by her brother, Harrison Longino, that she employed one Frank Laurent to take the mules from the place leased by Harrison Longino in December, 1926, to the town of Natchitoches, and to deliver them to another brother, Jasper Longino, whom she had constituted as her

agent to accept delivery of the mules. This, they say, was in December, 1926. Laurent, as a witness, swears he brought the mules to Natchitoches, but that it was in December, 1927. Pressed by counsel for Mrs. Murphy as to whether he could not be mistaken as to the year, he answered he could not, because it was only two or three months ago. It is, of course, immaterial whether this delivery was made in December, 1926, or in December, 1927, for the reason that the mules were not seized until in January or February, 1928. But where there is such a variance upon a matter important and material, must lead one to lose faith and confidence in the asserted or alleged delivery. The plaintiff and her brother testify it was immediately after the sale in December, 1926, this delivery was made. The witness, Laurent, says he brought them in December, 1927. However, if it be conceded Laurent ever brought the mules to Natchitoches for the purpose stated, and that Jasper Longino was authorized to accept them for the plaintiff, there is no evidence that he did so.

"Jasper Longino lived in the town of Natchitoches, and about or attached to his premises and place, there was no lot, corral, barn or any place to put them. If we be not mistaken, Jasper Longino was never sworn to testify to any acceptance or that he ever saw them. Laurent says he tied them to a wagon back of Jasper Longino's house, and there the matter of delivery ends. The mules are not heard of again until they are found in possession of Harrison Longino. Mrs. Jasper Longino, who lived with her husband, on direct examination said she knew nothing of any mules being brought there by Laurent, though Laurent says he talked with both Jasper Longino and his wife. This lady does say she saw two mules there at some time,—how long they remained there or what disposition was made of them is left to the merest conjecture.

"Believing no delivery was made, it is ordered that there be judgment rejecting the demands of Mrs. Murphy, at her costs, and the injunction sought is disallowed."

Finding no error in the judgment appealed from, the same is accordingly affirmed, with costs in both courts.