BOLIN, Judge.
E. C. Bess, judgment creditor of Turner the Plumber, Inc., seeks by revocatory action to set aside two acts of assignment executed by Turner in favor of two of its creditors. The petition alleges all defendants were guilty of fraud in the execution of the assignments and asks for a money judgment against the assignees for the amounts received under the assignments. Made defendants are Turner the Plumber, Inc.; Trend Homes, Inc.; Standard Plumbing & Appliance, Inc.; Universal Housing, Inc.; and American Bank & Trust Company. All defendants are Louisiana corporations domiciled in Ouachita Parish, Louisiana. From judgment rejecting plaintiff’s demands he appeals
This litigation evolved from rather extensive and complicated financial manipulations on the part of all parties concerned. We shall attempt to clarify them sufficiently to allow an orderly disposition of the issues involved.
Plaintiff had advanced to Turner various sums of money on or prior to August 21, 1967. These advances were evidenced by two promissory notes, one in the amount of $90,000 and the other in the amount of $65,-295.00. These notes were co-signed by Billy L. Fleming, J. O. Fleming and Oma G. Fleming, officers of Turner the Plumber, Inc. Bess filed suit for $114,468.68, the amount allegedly due on the notes, and obtained judgment for the full amount on September 26, 1968. On September 23, 1968, three days before the mentioned suit was set for trial, Turner executed notarial acts assigning two of its accounts receivable. In the first, Trend Homes declared it was then or would shortly be indebted unto Turner in the amount of $8,154.00 on sixteen residential plumbing contracts being performed and Turner assigned these proceeds to Standard Plumbing & Appliance. In the second assignment Universal declared it was indebted to Turner the Plumber in the amount of $8,571.24, of which Turner assigned $5,500.00 to American Bank and the balance to Standard. [The fact of Turner’s insolvency at the time of the above assignments is now conceded by all parties and was so found by the trial judge.]
It was alleged the two assignments were executed at a time when both defendants-assignees had knowledge, or had notice of facts sufficient to put them on inquiry, as to the insolvency of Turner the Plumber, and that such knowledge renders the assignments subject to annulment or revocation for fraud under Louisiana Civil Code Article 1984:
“Every contract shall be deemed to have been made in fraud of creditors, when *710 the obligee knew that the obligor was in insolvent circumstances, and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors of the obligor.”
The harshness of the foregoing article is slightly mitigated by the provisions of Civil Code Article 1986:
“No sale of property, or other contract made in the usual course of the party’s business, nor any payment of a just debt in money, shall be affected by virtue of any provision in this section, although the party was in insolvent circumstances, and the person with whom he contracted, or to whom he made the payment, knew of such insolvency.”
Following a lengthy trial, in which all parties except plaintiff testified, the trial judge found as a fact that defendants had no actual or constructive knowledge of Turner’s insolvency and rejected plaintiff’s demands.
The question before us is the correctness of the lower court’s decision, and whether the finding of lack of knowledge of insolvency is supported by the evidence. A secondary question, raised for the first time on appeal, is whether or not the assignments constituted dations en paiement so as to render them null, in spite of the lack of knowledge of insolvency, as being in violation of Louisiana Civil Code Article 2658, providing:
“This difference [from other contracts] gives rise to another in the effect of these contracts, in cases of the insolvency of the debtor. He may, although insolvent, lawfully sell for the price which is paid to him; but the law forbids to give in payment to one creditor, to the prejudice of the others, any other thing than the sum of money due.”
Appellant contends that should the court adopt this alternative argument there will be no need to make a finding of knowledge of the insolvency of Turner since the article prohibits the giving to a creditor by an insolvent debtor, to the prejudice of other creditors, any other thing than the sum of money due.
We shall consider the foregoing questions in reverse order since, as stated above, the fact of insolvency is conceded and a finding that the assignments violated Louisiana Civil Code Article 2658 would obviate the necessity of determining the issue of knowledge.
The trial judge, in his reasons for judgment, correctly found that the first three prerequisites for a revocatory action are established by the evidence: first, the necessary relationship of “competing” creditors and a common debtor; second, the insolvency of the common debtor at the time of the transactions; and third, a “preference” to the assignees over plaintiff in that the assignments channeled to the assignees funds which otherwise might have been available to apply against plaintiff’s judgment. In determining whether the assignments were a "giving in payment to one creditor, to the prejudice of the others, any other thing than the sum of money due” it becomes necessary to determine whether the assignments are, in the instant case, a “giving in payment”.
In appellant’s argument on this phase of the case he cites Louisiana Civil Code Article 2655 defining “giving in payment”:
“The giving in payment is an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due.”
Supporting the contention that the assignments by an insolvent amounted to a giving in payment of a thing other than money and, as such, are stricken with nullity, appellant cites Jones v. Longino, (2 Cir. 1929), 10 La.App. 256, 120 So. 711. In that case the court found from the evidence that Longino owed his sister $200; that the debtor owned two mules which he purportedly sold to his sister for $150, which amount was credited on the debt.
*711 The court noted the transaction was not a sale but amounted to a dation en paiement, or giving in payment. However, since there was no actual delivery of the mules to the sister, the court held the transaction failed to satisfy the requirements of Louisiana Civil Code Article 2656, i. e., the delivery was not complete, and the transactions could not affect the rights of third parties who were seizing creditors of the brother. No issue of insolvency was involved in the Jones case.
In the case before us appellant urges delivery was made and the transferrees became possessed as required by Articles 2642 and 2643 of the Louisiana Civil Code:
Art. 2642:
“In the transfer of credits, rights or claims to a third person, the delivery takes place between the transferrer and the transferree by the giving of the title.”
Art. 2643:
“The transferee is only possessed, as it regards third persons, after notice has been given to the debtor of the transfer having taken place.
“The transferee may nevertheless become possessed by the acceptance of the transfer by the debtor in an authentic act.”
We agree that, since the assignments were by notarial acts which were delivered to the assignees, there was an effective delivery of the assignments.
Appellant alleges the assignments were not taken as security or as a pledge for a just debt, but were taken as a direct and immediate payment on the debts due each creditor. He readily admits the language in the assignments states they were executed to secure payment of the debts, nevertheless he contends there remained no further obligation on the part of Turner and therefore the creditors, i. e., the assignees, received and accepted the assignments as payment.
We are cited to the case of American Rice Growers’ Co-op. Association v. Lake Charles Rice Milling Company, et ah, (La. App. 1 Cir. 1933), 149 So. 916, wherein it was held an assignment was not a payment in money, since the amount owed to assignor was not ascertained at the time of assignment. We find, upon further study of that case, the assignment was received and credited on the note, the following language being employed to show such credit: “Paid by assignment of account of Amer. Rice Growers Co-op. Ass’n and Chalkley Pool.” Clearly, in that case, the assignment itself was an act by which the debtor gave a “thing” to the creditor, who was willing to and did receive it, in payment of a sum which was due.
In the instant case, although the amounts due appear certain, we have no evidence the assignments were received as payments by American Bank and Standard. We have examined the original instruments here under consideration and find the following language, unmentioned by the parties:
“Upon payment by Universal Housing, Inc. to the American Bank and Trust Company in Monroe and to Standard Plumbing and Appliance, Inc., in accordance with this assignment, any amounts so paid shall constitute payment and receipt of the amounts that might be due and owing by Universal Housing, Inc. to Turner the Plumber, Inc.” (Emphasis added)
In the other instrument the recitation reads only slightly different:
“Receipt of such amounts by Standard Plumbing and Appliance, Inc. shall constitute payment in full of the amounts due by Trend Homes, Inc. to Turner the Plumber, Inc.
“And also under these presents comes and appears Standard Plumbing and Appliance, Inc., represented by O. D. West-brook, its President, which acknowledges receipt of a copy of this assignment of accounts receivable and agrees to observe and abide by same.”
*712 Both instruments were signed by all the parties thereto. However, we are not convinced that by acceptance of these assignments American Bank and Standard Plumbing intended that Turner’s debts should immediately be extinguished. Rather, the quoted language clearly conveys the idea that “if and when” the payments were received they would be applied on the debts due by Turner the Plumber. This language contradicts the idea that the acceptance of the assignments constituted simultaneous extinguishment of the debts, from which we conclude the instruments or assignments did not satisfy all the requirements of a giving in payment. As a consequence, the issue of knowledge, or lack thereof, of insolvency of Turner by American Bank and Standard becomes of paramount importance, and brings us to the question of the correctness of the trial court’s judgment.
On the issue of knowledge the trial judge, in his written reasons for judgment, observed:
“Any reasonable person, reviewing in retrospect the inter-relationships and other circumstances revealed by this record, must agree with plaintiff that many give rise to suspicion and that both assignees were actually in the position to practice ‘fraud’ or intentionally force Turner to ‘prefer’ them. On the other hand, when viewed in the light of events as they were then happening and in the context of the ‘climate’ and business practices then prevailing, many of the same circumstances lead to other conclusions equally plausible.”
For example, Mr. Sneed, vice-president of the American Bank, had handled all of Turner’s financial affairs with the bank for a number of years prior to this lawsuit. He admitted knowing Turner operated on low capital and frequently overdrew at the bank to cover pay-roll and other expenses; that he knew a number of contracts on which Turner was working for Ark-La Construction Company would not pay off because of the approaching insolvency of that company, one of the larger contractors. Early in September, 1968, when Oma Fleming, president of Turner the Plumber, approached Sneed for a loan Sneed finally agreed to extend him $7,000, but this sum was applied partially to the satisfaction of a past-due payment on an equipment note held by the bank, partially to cover Turner’s overdrafts and the remainder was credited to Turner’s account. It was this loan for which Sneed required the assignment to the bank of $5,500 from the amount owed Turner by Universal Housing, Inc. Additionally, Sneed was aware of the filing of the $114,000 suit against Turner by E. C. Bess. He testified he was given to understand this suit was the result of a “misunderstanding” and was “being taken care of”. He was aware of the formation of the new corporation, Plumbing, Inc., by the incorporators of Turner and that this new corporation was taking over the larger contracts being performed by Turner.
Westbrook, who acted for Standard in the assignments, had once been a stockholder in Turner and was, at the time of the assignments, the principal stockholder and officer in Standard, Trend Homes, and Universal Housing, as well as a stockholder and director in American Bank. At that time he knew Turner was having difficulty purchasing materials and supplies but had refused to grant additional credit through Standard. Thus, under the assignments the money due Turner from Trend Homes and Universal, both of which were Westbrook companies, would be paid to Standard, another Westbrook company.
Many other circumstances surrounding the various transactions were brought out in the testimony which would lend credence to the allegation that Sneed and Westbrook knew of or should have inquired into the solvency of Turner. However, the plausibility of the trial judge’s conclusion that neither Sneed nor Westbrook actually knew Turner was insolvent, or should have been *713 suspicious of same, is explained by him in the following manner:
“For example, the very fact that the various enterprises were rather closely inter-related fully explains their inclination to do business with one another. The knowledge on the part of Sneed that Turner was buying from one of West-brook’s companies and doing work for others of his companies, as well as for other patrons of the bank, would quite naturally cause less detailed inquiry on his part and might well result in less stringent credit or handling policies toward Turner. The various business connections between Westbrook and Turner would have a similar effect on their relationship. Moreover, it was then common knowledge, and this record reveals, that many persons and firms in the construction business were ‘under-financed’ and had their ‘ups and downs’, with extensive obligations depending upon continuing ‘turnover’ of work. It was, therefore, not unusual for Turner to be short of cash, overdrawn at the bank, or to encounter stressful periods requiring extensions of credit. * * * ”
The court further rationalized that assignees’ knowledge of Turner’s involvement with Ark-La Construction and that company’s difficulties could well have resulted in the reasonable conclusion that this was the cause of Turner’s immediate cash problems which might be resolved from proceeds of other work in progress. He also pointed to the testimony of Westbrook to the effect that Standard had never granted Turner credit in excess of the value of the work it had in progress for its affiliated companies and that the assignments were merely devices for the payment of a “just debt in money” in the usual course of business.
The court concluded plaintiff had failed to bear the burden of proving American Bank and Standard had actual or constructive knowledge of Turner’s insolvency. Although, in his reasons for judgment, the trial judge made the statement that defendants had proved the assignments were taken as contracts in the usual course of business or to pay operating debts necessary to continue Turner’s activities we consider these statements as mere expressions of opinion and not intended to place defendants’ dealing within the purview of Louisiana Civil Code Article 1986, quoted supra. The real basis for the judgment is the failure of plaintiff to prove actual or constructive knowledge of insolvency or fraud on the part of the assignees.
We conclude, following our review of the record, that the trial court’s findings are supported by the evidence. Accordingly, the judgment is affirmed at plaintiff’s cost.