**In re John Walter DUTY, Debtor.**

**Bankruptcy No. 86–00554–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

April 21, 1987.

---

**112**

Robert E. Hyman, Richmond, Va., for debtor.

Bruce E. Arkema, Richmond, Va., for Johnston-Willis, Ltd.

Robert A. Canfield, Richmond, Va., trustee.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter is before the Court on the filing by Johnston-Willis, Ltd. ("Johnston-Willis") of objections to the debtor's claimed exemption and motion requesting abandonment of property by the Trustee. After a hearing and upon the filing of briefs by counsel, this Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

John Walter Duty ("Duty"), the debtor herein, was injured in an automobile accident on January 12, 1984. Duty was a passenger in a car owned by Mr. Nester ("Nester"), which was being driven with permission by Edward Meeks ("Meeks"). It appears that Meeks swerved to avoid a deer in the road and ran the car into a tree. Duty testified that he was asleep at the time and had no idea what caused the accident. Hospital records indicate that Duty was admitted to the Johnston-Willis Hospital emergency room on January 13, 1984. These records also indicate that at the time of admission Duty signed an "Assignment of Insurance Benefits" form. This is supported by the testimony of Sherry H. Antone, the emergency room secretary who witnessed Duty's signature of the assignment. Ms. Antone also testified that prior to signing the form, all patients are informed as to the nature and consequences of the assignment, because it provides for a mode of payment which must be arranged before the hospital provides treatment (except in life or death situations). Thus, Duty is charged with knowledge of the assignment to Johnston-Willis.

Duty remained at Johnston-Willis for three weeks where he underwent surgery and treatment for a broken neck and concussion. After being discharged on February 3, 1984, Duty visited the Johnston-Willis outpatient ward for x-rays on three separate occasions. On each occasion, Duty signed the identical assignment form and has never revoked any of them.

During this time, Duty retained an attorney to pursue a personal injury action against Meeks under Nester's automobile insurance coverage. Duty settled with Nester's insurance carrier sometime in 1985 for approximately $20,000. The proceeds of the settlement were placed in an escrow account held by Duty's attorney. From that account, Duty made payments on some of his obligations up to the time he filed his Chapter 7 petition.[1]

The balance of Duty's account with Johnston-Willis for the three-week stay and three subsequent visits totaled $8,888.52. On April 11, 1985, however, Johnston-Willis obtained a summary judgment against Duty in the Circuit Court of the County of Chesterfield. The judgment was granted in the amount of $11,071.90 plus costs and interest at 12% per annum.

On March 21, 1986, Duty filed his petition in bankruptcy with this Court. On that date, Duty also executed and properly recorded a homestead deed claiming $4,143 of the personal injury proceeds as exempt property under Va.Code § 34-4. The remaining proceeds of the personal injury settlement were subsequently turned over to the Chapter 7 Trustee and now amount

---

1. The precise amount and date of the settlement were never adduced at the hearing nor was it disclosed in the briefs, pleadings or stipulations filed by counsel, however, the date of settlement appears to have been in April of 1985. It also is not clear whether Duty ever received directly any funds from this account or how much has been dispensed on his behalf.

to $11,530 plus interest which has accrued since delivery to the Trustee.

On May 12, 1986, Johnston-Willis filed a proof of claim of $12,479.03 which represented the state court judgment plus interest and court costs. Johnston-Willis also filed an objection to Duty's claim of exemption and a motion for the Trustee to abandon property.[2] Johnston-Willis claims that the debt owed to it by Duty should be paid from the proceeds of Duty's personal injury settlement which are held by the Trustee. Johnston-Willis contends that Duty, at the time he entered the hospital and on three subsequent occasions, made an assignment of insurance proceeds in consideration for medical treatment. Johnston-Willis further contends that the insurance proceeds held by the Trustee should be abandoned and be given to Johnston-Willis because they were validly assigned well before Duty filed his bankruptcy petition. Duty and the Trustee, on the other hand, contend that the language of the assignment does not contemplate insurance proceeds received by an assignor from a third party's insurance coverage and that the assignments in question are prohibited by Virginia law.

## CONCLUSIONS OF LAW

Virginia law provides that a right of action for a personal injury is nontransferable.[3] *Dillard v. Collins*, 66 Va. (25 Grat.) 400, 401 (1874). Although this prohibition is well recognized, the scope of the interpretation of the rule has not been decided by the Virginia Supreme Court. At least one case, however, has determined that Va. Code Ann. § 8.01–26 may be limited to causes of action for personal injuries alone and may not be extended to an assignment of the settlement proceeds or insurance

benefits thereof. *See In re Musser*, 24 B.R. 913, 920 (W.D.Va.1982).

The *Musser* decision is a consolidation of appeals on an identical question of law, that is, whether the proceeds from a personal injury settlement are assignable under Virginia law. The facts of the two appeals are strikingly similar to the instant case. In each instance, the debtor was injured in an automobile accident and was taken to the hospital where he signed an assignment form, since he did not have his own insurance. After each debtor settled his personal injury claim he filed a voluntary Chapter 7 petition claiming the proceeds of his personal injury settlement as exempt property under his homestead deed. The hospital in each case, sought to set aside the claimed exemptions contending that the proceeds of the personal injury settlements were effectively assigned to them.

The court, utilizing an equitable assignment theory, held that the prohibition against assignments of causes of action for personal injury does not proscribe a hospital from obtaining an equitable assignment of the sums to be recovered by an individual from a tortfeasor to the extent of the value of the services provided by the hospital in treatment of the individual's personal injuries. *Musser*, 24 B.R. at 922. A "legal assignment" is a manifestation of intent by the owner of a present right to make a present transfer of the right by virtue of which the assignor's right to performance by the obligor is extinguished and the assignee acquires a right to such performance. *Musser*, 24 B.R. at 919, *citing*, J. Calamari & J. Perillo, *The Law of Contracts* § 18–3 (2d ed. 1977); Restatement (Second) of Contracts § 317 (1981). While a transfer of something which does not exist is not a valid legal assignment, the

---

2. Section 554(b) provides that "on request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." The property of the estate *sub judice* is neither burdensome to the estate nor of inconsequential value, therefore, the styling of the motion filed by Johnston-Willis is incorrect. The action should have been brought as an adversary proceeding to recover money

held by the trustee. Nevertheless, this Court will address the motions of Johnston-Willis as filed.

3. "Only those causes of action for damage to real or personal property, whether such damages be direct or indirect, and causes of action ex contractu are assignable." Va.Code Ann. § 8.01–26 (1984 Repl.Vol.).

**114**

doctrine of equity treats it differently. *Musser*, 24 B.R. at 919.

The Court reasoned that an assignment for value of a future right, such as money to be acquired in the future, is an equitable assignment. Equity will treat the purported assignment as a promise to assign, with equitable ownership vesting in the [assignee] as soon as the article is acquired by the assignor. *Musser*, 24 B.R. at 191, *citing, Braxton v. Bell*, 92 Va. 229, 236, 23 S.E. 289, 291 (1895). *See also* 3 Pomeroy, *Equity Jurisprudence* § 1288 (3rd ed. 1905). Because the equitable assignor retains exclusive control over his personal injury lawsuit and any settlement thereof, the equitable assignment of the proceeds to be recovered on the claim does not violate the basis of the nonassignability rule (i.e., the prevention of champerty[4] and maintenance[5]). *See Richard v. National Transportation Co.*, 158 Misc. 324, 285 N.Y.S. 870 (1936), *cited with approval in In re Musser*, 24 B.R. 913, 920 (W.D.Va.1982). Thus, the interpretation espoused by the *Musser* court distinguishes the assignability of causes of action for personal injuries and assignability of the proceeds gotten from such an action. The court then, through its equity power, ordinarily will order specific performance of the promise after the right comes into existence. *Musser*, 24 B.R. at 919.

In contrast to the *Musser* analysis, other jurisdictions have not drawn a distinction between assignability of causes of action and the assignability of the proceeds thereof. *See e.g., Southern Farm Bureau Casualty Ins. v. Wright Oil Co.*, 248 Ark. 803, 454 S.W.2d 69 (1970); *McGhee v. Charley's Other Brother*, 161 N.J.Super. 551, 391 A.2d 1289, *affirmed*, 171 N.J.Super. 454, 410 A.2d 46 (1979); *Allstate Ins. Co. v. Druke*, 118 Ariz. 301, 576 P.2d 489 (1978). These jurisdictions believe that since the only value of a cause of action is its possible conversion into a collectible money judgment, there is no basis for distinguishing between the cause of action and its proceeds as far as assignability is concerned. *Wright Oil Co.*, 248 Ark. at 809, 454 S.E.2d at 72. Although assignments may not expressly attempt to assign the cause of action itself, that may be the practical result. Thus, these courts believe that if the consequences of the two types of assignments are the same, it would follow that the policy considerations which proscribe the assignment of one would preclude the assignment of the other.

■ This Court believes that the assignment of proceeds of the personal injury cause of action *sub judice* is permissible under Virginia law. Duty controlled the handling of his personal injury suit from its inception to the settlement with Nester's insurance carrier. Johnston-Willis had no hand in the entire process. Also, Johnston-Willis did not finance or carry out the litigation. Duty's claim reached its fruition through the settlement, thus the policy considerations behind the nonassignability rule, the prevention of champerty and maintenance, never existed. The assignment by Duty of insurance proceeds to be acquired in the future is an equitable assignment that vested in Johnston-Willis as soon as they were acquired by Duty. *Musser*, 24 B.R. at 191. Although this Court is not necessarily bound by the *Musser* decision, it is persuasive authority which should be followed absent circumstances which would distinguish the case at bar with the *Musser* situation. It appears that the views espoused by other jurisdictions on the issue of assignability of personal injury proceeds are not followed by Virginia. Since the facts before this Court are practically identical to those in *Musser*, and since the Virginia Supreme Court has not had the opportunity to opine on this issue, it is appropriate for this Court to follow the

**4.** Champerty is "a bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be recovered." *Black's Law Dictionary*, 209 (5th ed. 1979).

**5.** Maintenance "consists of maintaining, supporting or promoting the litigation of another." *Black's Law Dictionary*, 209 (5th ed. 1979).

Western District's interpretation of Virginia's law of assignability.

Having determined that the assignability of the proceeds of a personal injury action is permissible under Virginia law, we must examine whether Duty made a valid assignment of his interest in those proceeds. If the transfer is less than absolute, it is not an assignment; the obligee must have intended, at the time of the transfer, to dispossess himself of an identified interest, or some part thereof, and to vest indefeasible title in the transferee. *Kelly Health Care, Inc. v. Prudential Ins. Co.*, 226 Va. 376, 379, 309 S.E.2d 305, 307 (1983). *See* Restatement (Second) of Contracts § 317(1) (1981). However, when dealing with equitable assignments,

> [i]t is well settled in this jurisdiction that since equity disregards mere form, no particular words or acts are necessary to effect an equitable assignment. *The intention of the assignor is the controlling consideration.* (Emphasis added.)

*S.L. Nusbaum and Company v. Atlantic Virginia Realty*, 206 Va. 673, 681, 146 S.E.2d 205, 210 (1966).

This Court has made a finding that Duty signed all four of the assignments and that he was aware of what the assignments meant, therefore, what he intended to do is clear. Duty was in need of medical attention. He had no insurance and no other means to pay for the service—except, although unknown to him at the time, the possibility of receiving money from a suit against Meeks under Nester's insurance coverage. Since the custom of the hospital is not to provide treatment unless an arrangement for payment has been made (except in life or death situations), Duty was aware of and intended to make the assignment in consideration for the medical treatment. Duty's intention is the controlling consideration, therefore the assignment is valid.

Both Duty and the Trustee raise the question as to whether the wording of the assignment contemplated the recovery by a guest of a permissive user of an automobile from the insurance of the owner of the vehicle. Paragraph (7) of the assignment provides for the assignment to the hospital, with regard to its charges, *"any* policy of insurance." (emphasis added). Pursuant to Virginia's motor vehicle liability insurance "omnibus clause;"

> ... the term 'insured' [within auto insurance policies] ... means the named insured and, while resident of the same household, the spouse of any such named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies ...

Va.Code Ann. § 38.1–381 (Cumm.Supp. 1985).[6] The insurance of the owner of the vehicle, Nester, covers the liability of a permissive user, Meeks. *See Newton v. Employers Liability Assurance Corp.*, 107 F.2d 164 (4th Cir.1939), *cert. denied,* 309 U.S. 673, 60 S.Ct. 616, 84 L.Ed. 1018 (1940). Therefore, the guest of a permissive user is insured against any negligence of the permittee under the owner's policy. *See Pulley v. Allstate Insurance Co.*, 242 F.Supp. 330, 334 (E.D.Va.1965). Duty became an insured under Nester's policy and, therefore, had a benefit of coverage. Since the Johnston-Willis assignment clause states "any and all benefits under any policy of insurance," the breadth of the clause is sufficient to include the recovery which Duty received.

The determination of the assignability of proceeds from a personal injury cause of action is dispositive only of the issue of whether Duty may exempt, under his homestead deed, that part of the proceeds represented in the assignment. Any remaining proceeds beyond the scope of the assignment may be exempted by Duty.

---

6. This section was amended by Va.Code Ann. § 38.2–2204 (Repl.Vol.1986), however, the new section relates only to a policy issued subsequent to its passage [effective July 1, 1986], and is in *no sense retroactive in its effect. See Ellis* *v. New Amsterdam Cas. Co.,* 169 Va. 620, 194 S.E. 687 (1938). Since the policy under consideration was issued prior to July 1, 1986, Va. Code § 38.1–381 is applicable *sub judice.*

Section 541 of the Bankruptcy Code provides that the mere filing of a petition creates among other things the debtor's estate which includes all legal and equitable interests in property, including property of the debtor needed for a fresh start. Therefore, all property, including exempt property, comes into the estate. Once having come into the estate, property which the debtor wishes to exempt is permitted to be exempted in accordance with 11 U.S.C. § 522. That section states, in pertinent part:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection ... [s]uch property is—
>
>> (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
>>
>> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located ...

11 U.S.C. § 522(b)(1) and (2)(A).

Thus, Congress, after creating a "federal" exemption in the Code, deemed it appropriate to allow each state the opportunity to "opt out" of the exemptions listed in § 522(d) or mandate its own exemption laws. As a result, the Virginia General Assembly opted Virginia out of the "federal" exemptions and denied Virginia debtors the right to choose the federal exemptions stated in § 522(d). Va.Code Ann. § 34–3.1 (Repl.Vol.1984); *Cheesman v. Nachman*, 656 F.2d 60, 62 (4th Cir.1981). The issue then is whether and to what extent Virginia law provides an exemption for proceeds of personal injury claims.

In a nonbankruptcy situation once damages for a personal injury action become liquidated the tort victim's creditors may proceed against those monies despite the fact that they resulted from a cause of action for personal injuries. *In re Musser*, 24 B.R. 913, 922 (Bankr.W.D.Va.1982). Similarly, in a bankruptcy situation,

> [I]f the cause of action had been reduced to judgment or settled prior to the filing of the petition, the proceeds would have constituted an asset of the bankruptcy estate. The debtor would suffer the loss of these proceeds except to the extent he could avail himself of the use of state exemption statutes.

*Musser*, 24 B.R. at 922, *citing, In re Tignor*, 21 B.R. 219, 222 (Bankr.E.D.Va.1982), *affirmed in part*, 729 F.2d 977 (4th Cir. 1984).

Pursuant to the Virginia homestead exemption statute, a debtor is permitted to claim as exempt any claim he may have for bodily injury. Va.Code Ann. § 34–4 (Repl. Vol.1984). It has been held in the Fourth Circuit that the proceeds realized from a settlement of a personal injury action before the close of the bankruptcy case, were property of the estate. *Tignor v. Parkinson*, 729 F.2d 977, 982 (4th Cir.1984). The debtor is entitled to claim an exemption for such a claim, whether liquidated or unliquidated, only under the homestead exemption statute with other property claimed thereunder in the aggregate amount of $5,000. *Id.* It follows, then, that if proceeds realized from a personal injury action during a bankruptcy case may be claimed as exempt, proceeds gotten prior to the filing of the petition may also be claimed as exempt under Va.Code § 34–4.

It has been determined that such proceeds from a personal injury cause of action may be exempted under Virginia law, however, Duty must have had legal or equitable title in the property before it may come into his estate and be subject to exemption laws. 11 U.S.C. § 541. If the assignment is permissible under Virginia law and was validly executed by Duty, equitable ownership, with regard to that part of the proceeds represented in the assignment, vested in Johnston-Willis as soon as the proceeds from the personal injury action were received by Duty.

*Braxton v. Bell*, 92 Va. 229, 236, 23 S.E. 289, 291 (1895).

■ It is well established law that the trustee in bankruptcy takes only the title of the debtor in property of the estate. *See Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); *Wiley v. Public Investors Life Insurance Co.*, 498 F.2d 101 (5th Cir.1974).[7] The assignment in question was properly executed on January 13, 1984, prior to the bankruptcy filing of March 21, 1986. Duty acquired the proceeds sometime in 1985, prior to the filing. Thus, equitable ownership in the portion of the proceeds represented in the assignment vested in Johnston-Willis at the time they were acquired by Duty. *Braxton v. Bell*, 92 Va. 229, 236, 23 S.E. 289, 291 (1895). Duty cannot claim title to those proceeds, nor can the Trustee who only takes the title of the debtor. *See Matter of Flanders*, 45 B.R. 222, 224 (Bankr.M.D.Ga.1984). Additionally, the trustee cannot avoid Johnston-Willis' interest under 11 U.S.C. § 545 because Johnston-Willis is not asserting a lien on the proceeds, but rather an ownership interest through the assignment that vested prior to Duty's filing. Thus, Duty has no title in the proceeds covered by the assignment and cannot claim an exemption in them. The proceeds represented in the assignment were effectively assigned and title transferred prior to the filing of the petition[8] (and outside any preference period), therefore, that portion of the proceeds never became property of the estate and could not be claimed as exempt, nor could the trustee avoid Johnston-Willis' interest.

The assignment, however, covers only the charges of Johnston-Willis for medical services rendered to Duty. Since Johnston-Willis' interest in the proceeds extends only to the amounts specified in the assignment, proceeds of the personal injury settlement in excess of that amount became property of the estate and were validly exempted by Duty under his homestead deed. Thus, to the extent the proceeds held by the Trustee are in excess of the $8,888.52 balance due Johnston-Willis, Duty may retain the excess amount, to a maximum of $4,143,[9] as exempt property under his homestead deed.

The document containing the assignment also purports to impose upon Duty an obligation to pay attorney's fees for the collection of the account.[10] This Court does not intimate that a contract for payment that provides for attorney's fees as a condition to admittance to a hospital is invalid; however, it seems that an inequity exists in this instance in an award of attorney's fees being superior to the debtor's claim of exemption or even creating a superior interest to the general creditors of the estate. Duty executed a contract which contained an assignment, and after his discharge from the hospital his account was turned over to an attorney for collection. At that time he was not even certain he had a right to recover under anyone's insurance policy. But for the contract, no attorney's fees would have been allowed. The assignment portion of the document was not necessary for recovery of the account owed.

---

7. It is understood that *Pearlman* and *Wiley* were decided before the Bankruptcy Code of 1978 was written and § 541 was not under consideration by those courts, but the underlying principle involved was not changed by the language of the Code. *Harris v. Farmers Home Administration*, 7 B.R. 556, 557 (Bankr.M.D.Ga.1980).

8. Johnston-Willis' interest as against subsequent assignees is governed by the general rule of *qui prior est tempore, prior est jure,*—he who is first in point of time is first in right. *Evans v. Joyner*, 195 Va. 85, 87, 77 S.E.2d 420, 421–22 (1953) (adopting this rule as the controlling law in Virginia). Failure of the first assignee to give notice does not divest him of any title or right or vest any claim in a subsequent purchaser.

*Joyner,* 195 Va. at 88, 77 S.E.2d at 422, *citing Salem Trust Co. v. Manufacturer's Finance Co.,* 264 U.S. 182, 197, 44 S.Ct. 266, 270, 68 L.Ed. 628 (1924).

9. This amount is the portion of the personal injury settlement proceeds claimed as exempt in Duty's homestead deed.

10. Paragraph (2) of the assignment states "in the event that the undersigned fail to pay on demand and the account or accounts are turned over to an attorney for collection, they hereby agree to pay all collection costs and expenses including but not limited to attorney's fees of twenty-five percent (25%) of the balance due ..."

A review of the entire document reflects that this assignment has two purposes; payment of attorney's fees and assignment of insurance proceeds. Had the assigned benefits for payment of the hospital's charges arisen from hospitalization, major medical, workman's compensation or any other type of insurance, it is likely that payment would have been made directly to the hospital upon notification to the carrier. In such instances, attorney's fees, although constituting a debt of the patient under the contract document, would not have been recoverable against the insurance carrier.

This Court construes paragraph (7) of the document as limiting any recovery of insurance, from whatever source, to the hospital's charges and not to attorney's fees arising therefrom. The fact that insurance proceeds recovered by Duty which became the subject *res* of the assignment were held in escrow by Duty's attorney should not create a benefit on behalf of the hospital's attorneys. The American rule has generally been for the parties to bear their own costs absent contractual or statutory exceptions. This case, however, exhibits a tendency in the opposite direction, albeit by agreement. The ownership of the insurance proceeds arises in equity. This Court's conclusion rests in equity. Thus, the award of attorney's fees is determined by this Court to be appropriate to the extent that the award shall not constitute an impingement on the debtor's rights to the exemption claimed herein.

In summary, this Court holds that Duty validly assigned the portion of the insurance proceeds of his personal injury action to Johnston-Willis as represented in the assignment. Because of this assignment, Duty did not have title in that portion of the assigned proceeds when he filed a homestead deed claiming them as exempt under Va.Code § 34–4. Since Duty had no title in that part of the proceeds upon turning them over to the Trustee, it follows that the Trustee does not have title either. Thus, Johnston-Willis' objection to Duty's claim of exemption is a valid one. However, the objection is valid only to the extent that the exemption claims funds covered by the assignment. Thus, Duty has a valid exemption under his homestead deed for that portion of the personal injury settlement proceeds beyond the $8,888.52 owned by Johnston-Willis. That exemption is limited to the funds available and may not exceed the amount of $4,143, Duty's claimed exemption.

An appropriate Order will issue.