**In re Ronald L. RECKER and Mary L. Recker, Debtors–Appellants.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronald L. RECKER and Mary L. Recker, Defendants–Appellants.**

No. 4:94 CV 93 DDN.

United States District Court, E.D. Missouri, Eastern Division.

March 31, 1995.

Jim S. Green, Sikeston, MO, for Ronald L. Recker and Mary L. Recker.

Wesley D. Wedemeyer, Office of U.S. Atty., St. Louis, MO, and Michael A. Price, Asst. U.S. Atty., Office of U.S. Atty., Cape Girardeau, MO, for U.S.

James S. Cole, Jr., Asst. U.S. Trustee, U.S. Dept. of Justice, Office of Trustee, St. Louis, MO.

### MEMORANDUM

NOCE, United States Magistrate Judge.

This action is an appeal from the United States Bankruptcy Court for the Eastern District of Missouri, under 28 U.S.C. § 158 and Bankruptcy Rules 8001(a) and 8013. The debtor-appellant and the appellee United States each consented to the exercise of authority by a Magistrate Judge under 28 U.S.C. § 636(c)(3).

Debtor Ronald L. Recker (appellant) appeals from the November 29, 1993, judgment of the Bankruptcy Court[1] against him and in favor of the United States in the sum of $40,000.[2] This debt was determined by the Bankruptcy Court to be nondischargeable under 11 U.S.C. § 523(a)(6).[3]

An adversary hearing was held before the Bankruptcy Judge on November 16, 1993.[4] Following the hearing, Bankruptcy Judge Schermer made oral findings and conclusions on the record and in a subsequent written order. The Farmers Home Administration (FmHA) made three loans to the debtors, Ronald L. and Mary A. Recker, in the period 1981–1983. These loans were extended and renewed and on October 31, 1986, the debtors gave promissory notes for $12,423.37, $85,103.84, and $27,788.71. Gov.Exhs. 4, 5, and 6. Final payments were not due until the year 2001. These loans were secured by the debtors' crops which were grown on 250 acres of farmland.

By three security agreements, signed on September 10, 1990, March 22, 1991, and May 6, 1992, respectively, regarding the promissory notes at issue, the debtors granted the FmHA a security interest

in Debtor's interest in the following collateral, including the proceeds and products thereof after this collateral:

*Item 1.* All crops, annual and perennial, and other plant products now planted, growing or grown, or which are planted after this instrument is signed or otherwise become growing crops or other plant products (a) within the one year period or any longer period of years permissible under State law....

on the real estate specifically described in the agreements, including the 250 acres at issue in this action. *See* Gov.Exhs. 1, 2, and 3. The government perfected its security interest by filing a financing statement, signed by the debtors, which covered crops and other property, in favor of the United States. The agreement was filed with the Recorder of Deeds of New Madrid County, Missouri, on January 26, 1990.

In October 1991, Ronald Recker did not have enough capital to plant a winter wheat crop on the 250 acres at issue. Therefore, he borrowed $7,500 from his father, Bernard

---

1. The Honorable Barry S. Schermer, United States Bankruptcy Judge.

2. The Bankruptcy Court also ruled in favor of debtor Ronald Recker and against the United States on an additional claim involving federal disaster insurance proceeds and in favor of debtor Mary L. Recker on all claims of the United States. Those rulings are not appealed.

3. Section 523(a)(6) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 13428(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

4. The undersigned has reviewed the audio recording of the adversary hearing.

Recker. Later that month Ronald planted the winter wheat on the 250 acres.

In January 1992, Ronald went to the FmHA office to obtain a subordination agreement so that he could get more bank credit for the operation of the farm. At this time, FmHA denied the subordination. Recker then told the FmHA that, because he could not get the subordination, he would turn over the operation of the farm to his father; the FmHA employee responded that the agency had a mortgage on the crop. Later, the FmHA changed its position and determined it would give Recker a subordination. However, the bank still refused to extend the credit.

In April 1992, because he did not have the capital necessary to harvest the wheat crop, which would normally occur in the May to July period, Ronald went to his father. To pay off the $7,500 loan previously extended by his father, knowing that the 250 acres were encumbered with the lien of the FmHA, Ronald leased the 250 acres to his father. Bernard then employed Ronald as the farm manager at $1,700 per month (for approximately eight months of 1992), and Ronald assigned to Bernard the wheat crop and a contract Ronald had entered with Bunge Corporation in February 1992 for the sale of the crop.

In the Spring of 1992, Ronald and Bernard Recker harvested the winter wheat crop and sold it for approximately $40,000, to various buyers, including the Bunge Corporation. None of these sale proceeds and none of the monthly management fees paid to Ronald by his father were paid to FmHA on Recker's promissory notes. Ronald did not disclose the receipt of the manager's fee until after the bankruptcy proceedings were begun. The government did not consent to the transfer of the wheat to Ronald Recker's father or to the sale of the wheat. Ronald Recker did not obtain a release of the security interest from the government.

The Bankruptcy Court concluded that there was sufficient consideration given by the United States for the rollovers of the promissory notes which obligated the Reckers; that the United States had a security interest in the crops which were sold; and

that the government's security interest had been perfected by the filing of the financing statement with the Recorder of Deeds. The Bankruptcy Court further concluded that the actions of Ronald Recker in transferring the crop to his father and in selling the wheat was a conversion of the wheat to the "willful and malicious injury by the debtor to another" under 11 U.S.C. § 523(a)(6). Thereupon, the Court granted judgment to the United States against Ronald L. Recker in the sum of $40,000 and it denied him a discharge of the $40,000 debt. Ronald L. Recker has appealed from this judgment.

■ The standards for appellate review of a bankruptcy order are clear. The factual findings of the Bankruptcy Judge may not be overturned unless they are clearly erroneous; the conclusions of law of that court are to be reviewed *de novo*. *United States v. Olson*, 4 F.3d 562, 564 (8th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 636, 126 L.Ed.2d 594 (1993); Bankr.R. 8013.

■ Appellant Recker argues that the United States had no lien in the crop he planted in the fall of 1991 and harvested in 1992, because, first, there was no consideration given to him for the security agreements he signed in 1990, 1991, and 1992, for the earlier loan transactions. The Bankruptcy Judge held in his written order that the government's forbearance, extension and renewal of the loans were sufficient consideration for the note rollovers. The undersigned agrees. *See Missouri Farmers Ass'n Inc. v. Barry*, 710 S.W.2d 923, 926 (Mo.Ct. App.1986); *Minnesota Mutual Life Insur. Co. v. Manthei*, 189 S.W.2d 144, 148–49 (Mo. Ct.App.1945).

■ Next, appellant argues that FmHA had no validly perfected security interest in the winter wheat crop. This Court disagrees. Article 9 of the Missouri Uniform Commercial Code, Mo.Rev.Stat. § 400.9–101, *et seq.,* controls whether the facts of this case created in the FmHA a security interest in the winter wheat crop. *United States v. Newcomb*, 682 F.2d 758, 761 (8th Cir.1982). A security interest is enforceable against a debtor when:

(a) ... the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown ... a description of the land concerned; and

(b) value has been given; and

(c) the debtor has rights in the collateral.

Mo.Rev.Stat. § 400.9–203(1) (1994). It is not contested that the Reckers signed three security agreements and that one financing statement was filed in New Madrid County, Missouri, on January 26, 1990. Appellant argues that FmHA never perfected its security interest, because it failed to file its financing statement every twelve months, as required under the Missouri Uniform Commercial Code prior to its amendments which became effective on January 1, 1989. *See* Mo.Rev.Stat. §§ 400.9–204(4)(a) (1986), 400.9–302(1) (1986).

Appellant's reliance on the pre–1989 U.C.C. is misplaced. Mo.Rev.Stat. § 400.11–103 (1994) provides the statutory standards which are to be applied in transactions entered into before January 1, 1989, and regarding security interests perfected after that date. Section 400.11–103 (1994) provides in relevant part:

Transactions validly entered into after July 1, 1965, and before January 1, 1989, and which were subject to the provisions of chapter 400, as it reads prior to January 1, 1989, and which would be subject to this section if they had been entered into after January 1, 1989, and the rights, duties and interests flowing from such transactions remain valid after the latter date and may be terminated, completed, consummated, or enforced as required or permitted by chapter 400, as it reads after January 1, 1989.

Thus, the relevant rules of decision are provided by the Missouri Uniform Commercial Code as it reads after January 1, 1989. Under present Missouri law, the annual re-filing of financing statements is not necessary to protect a security interest in crops. *See* Mo.Rev.Stat. § 400.9–204 (1989); F. Koger & S.A. Reynolds, *Missouri Adopts the Revised*

*Uniform Commercial Code,* 45 J.Mo.Bar 27, 30 (Jan.–Feb. 1989). Consequently, in 1992 the FmHA had a validly perfected security interest in the wheat crop at issue.

■ Appellant argues in the alternative that, even if FmHA had a perfected lien, his father, Bernard, would be the party responsible for distributing any proceeds he received from this wheat. This view of the record overlooks the undisputed facts that Ronald had entered at least one contract for the sale of the crop before the transfer of operations to his father, that he worked for and with his father in the harvesting of the crop, and that he knew of the government's interest in the crop. He is as responsible as his father for the distribution of the sale proceeds other than to the FmHA.

■ Appellant argues that the evidence was insufficient to support the findings and conclusion that his actions constituted willful and malicious injury to the FmHA, as required by 11 U.S.C. § 523(a)(6).[5] Clearly, appellant injured the interest of FmHA in the crop by converting it. Under Missouri law, "[c]onversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Centerre Bank Nat'l Ass'n v. Missouri Farmers Ass'n, Inc.,* 716 S.W.2d 336, 341 (Mo.Ct.App.1986); *Maples v. United Savings and Loan Ass'n,* 686 S.W.2d 525, 527 (Mo.Ct.App.1985).

Appellant argues that the mere transfer of the property underlying the security interest is not conversion. However, because his sale of the crops in which FmHA had a perfected security interest was unauthorized, this sale constituted a tortious transfer of FmHA's property. *See In re Drenckhahn,* 77 B.R. 697, 705 (Bankr.D.Minn.1987).

In his oral decision, the Bankruptcy Judge applied the standards set forth in *In re Long,* 774 F.2d 875 (8th Cir.1985), in determining whether the injury was willful and malicious and therefor nondischargeable.

When transfers in breach of security agreements are in issue, we believe nondischargeability turns on whether the conduct is (1) headstrong and knowing ("willful")

**5.** *See* footnote 3, supra.

544

and, (2) targeted at the creditor ("malicious"), at least in the sense that the conduct is certain or almost certain to cause financial harm.

\* \* \* \* \* \*

Debtors who willfully break security agreements are testing the outer bounds of their right to a fresh start, but unless they act with malice by intending or fully expecting to harm the economic interests of the creditor, such a breach of contract does not, in and of itself, preclude a discharge. 774 F.2d at 881–82.

The record supports the findings that Ronald Recker and his father engaged in the lease-management scheme after FmHA initially turned Ronald down for the subordination, that Ronald knew of the FmHA lien on the 250 acres and the crops on this land, that Ronald arranged for the sale of the wheat without FmHA approval, that Ronald paid none of the management fee to FmHA, and that none of the sale proceeds were paid to FmHA. These facts establish that Ronald acted "headstrong and knowing" and acted in a way that was certain to cause financial harm to FmHA's interests in the crop. Appellant acted willfully and maliciously under § 523(a)(6), as the Bankruptcy Court concluded.

For the foregoing reasons, the judgment of the Bankruptcy Court is affirmed.