**In re Rebecca Kimberley RAYMOND, Chapter 7 Debtor.**

**Robert Rhoades RAYMOND, Plaintiff,**

v.

**Rebecca Kimberley RAYMOND, Defendant.**

Bankruptcy No. 96–34744–T.
Adversary No. 96–3198–T.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

May 30, 1997.

---

Archie C. Berkeley, Jr., Berkeley & De-Gaetani, Richmond, VA, for Plaintiff.

Rebecca Kimberley Raymond, Midlothian, VA, Pro se Debtor/Defendant.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Trial was held March 25, 1997, on plaintiff's complaint to except debt from discharge pursuant to 11 U.S.C. § 523(a)(6).

For reasons stated in this opinion, judgment will be entered in favor of plaintiff excepting the debt from discharge.

*Findings Of Fact*

Plaintiff and debtor defendant Rebecca Kimberley Raymond were married on February 17, 1984. They were divorced under a final decree of divorce entered by the Circuit Court of Chesterfield County, Virginia, entered December 27, 1994.

The parties entered into a property settlement agreement dated August 31, 1994, which agreement was incorporated in their divorce decree.

At the time of their divorce both parties were liable under a judgment in the approxi-

mate amount of $70,000.00. Paragraph 15 of their property settlement agreement of August 31, 1994, contained the following provision relative to the judgment:

Par. 15 . . .

The parties acknowledge that Bob and Kim have a marital indebtedness known as the Perkins judgment on which they owe an approximate balance of $70,000, and which obligation is currently subject to a certain agreement entered into by Bob and Kim and the creditors. Bob agrees to hold Kim harmless on any liability on that judgment up to the first $25,000. The parties will be equally obligated on any additional indebtedness on that judgment up to $55,-000, and Bob assumes full responsibility for any amounts owed over $55,000 and agrees to hold Kim harmless thereon. Therefore, the limit of Kim's exposure on this indebtedness is $15,000. . . .

Until this indebtedness is retired, and so long as Kim remains responsible for any part of it, the parties agree that $15,000 of Kim's share entitlement to the Raymond & Colesar Pension Plan (as provided for in Paragraph 13) shall be preserved in her IRA to serve as security for her obligation.

Pltf's Ex. 1.

Paragraph 13 of the parties' property settlement agreement provided for debtor to receive one-half of plaintiff's pension plan (less deductions), which upon her receipt was to be deposited (rolled over) by her to an Individual Retirement Account.

By an agreement dated May 24, 1995, the parties settled the $70,000.00 Perkins judgment debt referred to in ¶ 15 of their property agreement. The debt was satisfied by plaintiff's cash payment of $55,000.00 to the judgment creditor along with his promise to pay the $15,000.00 balance in monthly installments to the creditor over a 36 month period. At the time of the settlement of May 24, 1995, debtor was aware that she remained liable to plaintiff for $15,000.00 of this judgment debt as well as the other provisions of ¶ 15 of the property settlement agreement.

In January 1996, plaintiff's pension plan was liquidated. From this liquidation debtor was entitled to the sum of $17,329.96 pursuant to ¶ 13 of the parties' property agreement. On February 5, 1996, this sum was transferred to an IRA account opened by debtor in Signet Bank.

At the time debtor opened her IRA at Signet, she was aware of the provision of ¶ 15 of the property settlement agreement which provided that $15,000.00 of her share of plaintiff's pension fund was to "be preserved in her IRA to serve as security for her obligation" to plaintiff in the same amount.

On February 7, 1996, debtor withdrew all funds from her Signet IRA, transferring them to her checking account. She subsequently expended virtually all of these funds to pay personal debts and living expenses. She used none of the IRA account to pay on her $15,000.00 debt to plaintiff.

On July 11, 1996, the Circuit Court of Chesterfield County entered judgment in favor of plaintiff and against debtor in the amount of $15,000.00, based upon debtor's obligation to plaintiff under ¶ 15 of the property settlement agreement. Debtor remains liable for this judgment.

*Discussion And Conclusions*

The $15,000.00 indebtedness in issue here was imposed on debtor under the parties' property settlement agreement. The agreement also provided that the debt would be secured by funds to be received by debtor from plaintiff's pension fund and to be placed by debtor in an IRA.

■ Since the security aspect is clear from the agreement, the court finds that plaintiff held a property right in debtor's IRA. *See Rountrey v. Lee (In re Lee),* 90 B.R. 202, 204 (Bankr.E.D.Va.1988). Moreover, as between the parties, plaintiff held a $15,000.00 security interest in debtor's IRA pursuant to the Virginia Uniform Commercial Code provisions, Va.Code §§ 8.9–201 to 9–203.[1]

---

1. Debtor argues that the IRA was a deposit account and thus excepted from the Virginia Uniform Commercial Code under Va.Code 8.9–104(*l*). In *State First Nat'l Bank v. Nix (In re*

*Nix),* 864 F.2d 1209, 1211 (5th Cir.1989), the court held that a debtor's Keogh plan was not a deposit account excluded from UCC Article 9. Given the similarity between an IRA and a

The debtor used plaintiff's collateral security, $15,000.00 of her IRA, to pay debts and living expenses rather than to repay her obligation to plaintiff. She has acknowledged that she knew of plaintiff's interest when she spent the money, stating that her financial condition required her to use the money for other purposes.

At trial, debtor's only justification in testimony for spending the IRA funds other than financial need was her hope for some sort of settlement of the parties' judgment debt which would relieve her of her $15,000.00 obligation. The problem with this argument is that the judgment had been settled the previous year following the parties' sale of their residential real property. The record does not reveal any other potential settlement, except possibly debtor's hope to settle the claim with plaintiff.

Section 523(a)(6) excepts from a debtor's discharge a debt

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

According to case authority the terms "willful and malicious" carry separate but quite similar definitions, and courts have usually made separate findings as to each.

■ Thus willful means "a deliberate or intentional act which necessarily leads to injury." *In re Lee,* 90 B.R. at 207.

The malicious element is usually more difficult to prove. Malice, according to *Black,* is:

> The intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent....

*Black's Law Dictionary* 862–63 (5th ed. 1979); *see also Conte v. Gautam (In re Conte),* 33 F.3d 303, 308 (3d Cir.1994)(defining willful and malicious actions under § 523(a)(6) as wrongful acts which "were

substantially certain to result in injury or where the debtor desired to cause injury" and citing the Fourth Circuit opinion in *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d 1003, 1009–10 (4th Cir.1985)); *Hagan v. McNallen (In re McNallen),* 62 F.3d 619, 625 (4th Cir.1995).

■ However, there is no requirement that specific malice, ill will, or spite be proven. Implied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient under § 523(a)(6). *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d at 1010; *see also In re McNallen,* 62 F.3d at 625; *Traditional Indus., Inc. v. Ketaner (In re Ketaner),* 149 B.R. 395, 400 (Bankr. E.D.Va.1992), *appeal dismissed,* 154 B.R. 467 (E.D.Va.1993).

■ In considering the issue of malice, the court must look at

> the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor .... [a debtor's] malicious intent must be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights....

*C.I.T. Fin. Servs., Inc. v. Posta (In re Posta),* 866 F.2d 364, 367 (10th Cir.1989).

Given the breadth of § 523(a)(6) and the variety of factual patterns the statute has produced, case decisions have been somewhat lacking in uniformity.[2] One recurring scenario in which there has been *some* uniformity of result is a debtor's disposition or conversion of a creditor's collateral security.

*Collier* states the general rule succinctly:

> Transfers in breach of a security agreement may give rise to nondischargeable liability when the debtor's conduct is knowing and certain or almost certain to cause financial harm.

Norman W. Pressman & Teresa A. Generous, *I May Be Willful, But Am I Malicious?*, Norton Bankr.L. Adviser, Dec. 1996, at 1.

Keogh plan, I find that the debtor's IRA was not a deposit account.

**2.** For an article highlighting the discrepancies of result among the circuits on the malice issue, see

4 *Collier On Bankruptcy* ¶ 523.12[1] (Lawrence P. King et al. eds., 15th ed. rev.1997) (citing *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84 (2d Cir.1996); *In re Posta*, 866 F.2d at 364; *United States v. Recker (In re Recker)*, 180 B.R. 540 (E.D.Mo. 1995); *First of Am. Bank v. Afonica (In re Afonica)*, 174 B.R. 242 (Bankr.N.D.Ohio 1994); *Deere & Co. v. Contella (In re Contella)*, 166 B.R. 26 (Bankr.W.D.N.Y.1994)); *see also Barclays Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985); *In re Lee*, 90 B.R. at 207.

■ Turning to our case, the debtor undoubtedly acted willfully when she disregarded her husband's collateral security and spent the $15,000.00 from her IRA for personal debts.

On the issue of malice, while debtor's conduct does not seem quite as egregious as that of some debtors in the reported cases,[3] her actions fit rather precisely within the general case law definition of a malicious disposition of another's collateral. She used the IRA funds with actual knowledge of the plaintiff's security interest, which was certain or almost certain to harm plaintiff as debtor had no reasonable ability to pay the debt otherwise.

Perhaps debtor believed that the plaintiff would not pursue her to court to collect what he was due. However, nothing in the record suggests a basis for such a belief. In fact, plaintiff's relentless pursuit of the claim suggests the contrary.

Although this is a close case, I find that plaintiff has carried his burden to establish that the debtor acted willfully and maliciously in disposing of the IRA. The sum of $15,000.00 will therefore be excepted from debtor's discharge.

---

**3.** Compare, for example, *In re Lee*, 90 B.R. at 204, where the debtor fraudulently concealed his receipt of funds, which were due in part to his former spouse.