**In re Nancy A. GANDARA a/k/a Nancy Himber, Debtor.**

**Michael D. POLLOCK, Plaintiff,**

**v.**

**Nancy A. GANDARA, Defendant.**

**Bankruptcy No. 97–31342–T.
Adversary No. 97–3088–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Dec. 19, 1997.

---

William J. Doran, III, Chaplin, Papa & Gonet, Richmond, VA.

William R. Baldwin, III, Hirschler, Fleischer, Weinberg, Cox, & Allen, P.C., Richmond, VA.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Trial was held in this adversary proceeding on September 25, 1997, to determine the dischargeability of a debt under 11 U.S.C. § 523. At the conclusion of the evidence, this court dismissed plaintiff's §§ 523(a)(2) and (a)(4) claims and took the § 523(a)(6) claim under advisement pending submission of the parties' proposed findings of fact and conclusions of law. For reasons stated in this opinion, judgment will be entered in favor of plaintiff for $5,138.00 and excepting the debt from discharge pursuant to § 523(a)(6) as a willful and malicious injury.

### Findings of Fact

From October 12, 1995, until January 1997, the plaintiff, Dr. Michael Pollock, a doctor of chiropractic, treated the debtor Nancy A. Gandara, formerly known as Nancy Himber, for injuries sustained as a result of an automobile accident which occurred in Florida on August 19, 1995. During that period, Dr. Pollock treated debtor on more than fifty different occasions. The undisputed balance of debtor's account with Dr. Pollock is $5,138.00.

On October 12, 1995, during her first visit to Dr. Pollock's clinic, debtor executed an agreement entitled "Irrevocable Assignment, Lien and Authorization Insurance Benefits and Attorney." This option of payment is typically given to patients who seek treatment in Dr. Pollock's clinic, are unable to pay at the time of the visit, and have a pending personal injury suit. That agreement states in pertinent part:

> I hereby authorize and direct you, my insurance company, and or my attorney, to pay directly to Dr. Michael D. Pollock, D.C. at Bon Air Chiropractic Clinic ... such sums as may be due an [*sic*] owing this office for services rendered by me [*sic*], both by reason of accident of illness, and by reason of any other bills that are due this office and *to withhold such sums* from any ... medical payments benefits ... or any other insurance benefits obligated to reimburse me or *from any settlement,* judgment or verdict on my behalf as may be necessary to adequately protect said office. I hereby further *give a lien to said office* against any and all insurance benefits named herein, and *any and all proceeds of any settlement,* judgment or verdict which may be paid to me as a result of the injuries or illness for which I have been treated by said office. *This to act as an assignment of my rights and benefits* to the extent of the office's services provided. (emphasis added).

As Dr. Pollock's treatment of debtor progressed, the subject of payment was periodically discussed. Dr. Pollock expressed concern because money paid by debtor's auto insurance company under "medical payments coverage" had not been sent to him to cover her treatment but had instead been sent to debtor's Florida personal injury counsel. On each occasion, debtor reassured Dr. Pollock that he would be paid at settlement. Debtor's Florida personal injury counsel also represented to Dr. Pollock that he would be paid at settlement.

Significant to settlement of debtor's personal injury case was Dr. Pollock's report of his treatment of debtor. Dr. Pollock submitted this report to debtor's Florida counsel on or about December 12, 1996.[1] Debtor settled

---

1. Debtor alleged that Dr. Pollock delayed unnecessarily in the preparation and submission of the report. Dr. Pollock testified that he needed additional observation time in order to make an

her claim for $32,500.00 on January 22, 1997. One week later debtor signed a disbursement statement detailing the various costs and fees that were to be deducted from the settlement sum. After attorney's fees and costs were subtracted, $22,129.65 remained of which debtor received $13,690.99. According to the disbursement statement which debtor signed, this amount represented "full and final satisfaction" of her pending personal injury claim.

Also listed on the statement were "Outstanding Medicals" which included $5,138.00 owed to Dr. Pollock's clinic. In accordance with the statement, the Outstanding Medicals were to be held in escrow.

Debtor filed this Chapter 7 bankruptcy petition on February 26, 1997, after receiving her first disbursement of the settlement proceeds. Debtor scheduled $12,000.00 in proceeds from her personal injury settlement as exempt pursuant to Va.Code 34–28.1. Around that time, debtor decided that she would not pay Dr. Pollock for his services based on his failure to submit the treatment report in a timely manner. Debtor later requested and received a second payment of approximately $4,500.00 from Florida counsel. On May 1, 1997, debtor amended her bankruptcy schedules, increasing her exemption claim to $22,129.65 consisting of $18,328.99 "in debtor possession" and $3,800.66 in counsel's possession in Florida.

### Discussion and Conclusions of Law

Dr. Pollock filed this action seeking a determination that the debt is nondischargeable under 11 U.S.C. §§ 523(a)(2), (4) and (6). At the conclusion of trial, the court ruled from the bench that Dr. Pollock failed to make a case under either § 523(a)(2) or (4). The only issue remaining concerns the allegations under § 523(a)(6).

accurate assessment of debtor's injury, stating he feels a particular responsibility for accurateness when asked to convey information on a patient's permanent injuries and prognosis for future medical treatment. Debtor claimed the delay caused her to receive a smaller settlement award than would have been received had the report been submitted earlier. However, this claim is unsubstantiated, and no evidence is before the court suggesting how long preparation of such reports normally takes.

To prevail on a claim under 11 U.S.C. § 523(a)(6)[2], Dr. Pollock must show by a preponderance of the evidence, *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), that debtor acted willfully and maliciously to injure his property.

This court must first determine whether Dr. Pollock had a property interest in debtor's settlement proceeds. Assignment of the proceeds of a personal injury cause of action to a health care provider is permitted under Virginia law. *In re Duty*, 78 B.R. 111, 114 (Bankr.E.D.Va.1987); *Community Hosp. of Roanoke Valley, Inc. v. Musser (In re Musser)*, 24 B.R. 913, 922 (W.D.Va.1982). The assignment of a future right is an equitable assignment rather than a legal assignment. *In re Duty*, 78 B.R. at 114. Equitable ownership vests in the assignee as soon as the article assigned is acquired by the assignor. *Id.* Therefore, if debtor's assignment was valid, Dr. Pollock's equitable ownership of the property vested at the time debtor received the proceeds. At that point, debtor could no longer claim title to an amount of the proceeds equaling the cost of her treatment by Dr. Pollock. *Id.* at 117.

For an assignment to be valid, the assignor must have intended at the time of transfer to dispossess himself of an identified interest and vest indefeasible title in the assignee. *Id.* at 115. The intention of the assignor is the controlling consideration. *Id.* (quoting *S.L. Nusbaum and Co. v. Atlantic Virginia Realty*, 206 Va. 673, 681, 146 S.E.2d 205, 210 (1966)).

In this case debtor contends that she did not appreciate the meaning of the assignment agreement and therefore could not have intended to assign her rights to Dr. Pollock. This court finds, however, that debtor sufficiently understood the agreement

**2.** The Bankruptcy Code provides some exceptions to the debtor's right to discharge debt. Specifically, 11 U.S.C. § 523(a)(6) states:

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt ... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

and fully intended to create an assignment of the settlement proceeds in consideration for Dr. Pollock's medical treatment.

This is first reflected in the document itself. Debtor signed the document on her first visit to Dr. Pollock. Even if debtor did not completely understand the legal ramifications of the assignment, she is bound by her signature. Virginia law clearly states that "in the absence of fraud, duress, or mutual mistake, an individual having the capacity to understand a written document, who signs that document ... is bound by his signature." *First Virginia Bank–Colonial v. Masri,* 245 Va. 461, 463, 428 S.E.2d 903, 904 (1993) (citing *First Nat'l. Exch. Bank v. Johnson,* 233 Va. 254, 259, 355 S.E.2d 326, 330 (1987)); *Metro Realty of Tidewater, Inc. v. Woolard,* 223 Va. 92, 99, 286 S.E.2d 197, 200 (1982).

Further, debtor's intention and understanding was reflected in her continual reassurance to Dr. Pollock that he would be paid at settlement. Debtor confirmed her intention when she later signed the disbursement statement (as a prerequisite to receiving her settlement proceeds) acknowledging full and final satisfaction of her claim. The disbursement statement clearly designated certain funds for payment to Dr. Pollock. Debtor testified that she decided not to pay Dr. Pollock only after filing for bankruptcy.

Debtor's intention is the controlling consideration, and this court finds that a valid assignment was created by debtor's signature on the agreement and also by her statements of reassurance thereafter. *See In re Duty,* 78 B.R. at 115. Therefore, title to $5,138.00 of the proceeds vested in Dr. Pollock upon receipt by debtor.[3]

■ Once it is established that the proceeds were Dr. Pollock's property, the court must consider whether debtor acted willfully and maliciously in deciding not to turn over Dr. Pollock's portion of the proceeds. This court has consistently held that "willful" means "a deliberate or intentional act which necessarily leads to injury." *Raymond v.*

*Raymond (In re Raymond),* 210 B.R. 710, 713 (Bankr.E.D.Va.1997) (citing *Rountrey v. Lee (In re Lee),* 90 B.R. 202, 207 (Bankr. E.D.Va.1988)). Applying the facts as found by this court, it is clear that the debtor deliberately and intentionally, and therefore willfully, chose not to pay Dr. Pollock's bill. It is also clear that this choice led to an injury to Dr. Pollock by denying him his rights to the $5,138.00 that became his property upon receipt by debtor of the settlement proceeds.

■ As with many others, this case therefore turns on whether the debtor's acts were malicious. Malice, according to Black is:

> The intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent....

*In re Raymond,* 210 B.R. at 713 (citing Black's Law Dictionary 862–63 (5th ed. 1979)). There is no requirement to show specific malice, ill will, or spite. *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d 1003, 1010 (4th Cir.1985). Implied malice is sufficient where there is an injurious act done in "knowing disregard of the rights of another." *Id.* Because it is the debtor's subjective state of mind that is relevant, the court may look for implied malice in the "acts and conduct of the debtor in the context of [the] surrounding circumstances." *Stanley v. Stanley (In re Stanley),* 66 F.3d 664, 668 (4th Cir.1995) (citing *McNallen v. McNallen (In re McNallen),* 62 F.3d 619, 625 (4th Cir.1995)).

■ In considering the issue of malice, the court must look at

> the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor.... [A debtor's] malicious intent must be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that,

---

3. Because debtor validly assigned to Dr. Pollock the proceeds of the personal injury settlement, she is precluded from claiming that portion of the proceeds assigned to Dr. Pollock as exempt under Va.Code § 34–28.1. Therefore, that exemption does not affect Dr. Pollock's rights to the property in any way.

with that knowledge, proceeded to take action in violation of those rights. . . .

*In re Raymond,* 210 B.R. at 713 (Citing *C.I.T. Fin. Servs., Inc. v. Posta (In re·Posta),* 866 F.2d 364, 367 (10th Cir.1989)).

This court has previously recognized the wide variety of decisions rendered under § 523(a)(6). As pointed out in *In re Raymond,* "[o]ne recurring scenario in which there has been *some* uniformity of result [in § 523(a)(6) cases] is a debtor's disposition or conversion of a creditor's collateral security." 210 B.R. at 713 (emphasis in the original). In *Raymond* the debtor withdrew and spent funds in which the plaintiff held a security interest as part of a property settlement agreement between husband and wife. The court found that the debtor's use of the funds with actual knowledge of the plaintiff's security interest satisfied the definition of malicious disposition of another's collateral.[4] *Id.* at 714.

Here the court has held that debtor knew of Dr. Pollock's interest in the proceeds of the settlement yet deliberately withheld those funds upon receipt. Similar to the facts in *Raymond,* this deliberate conversion of Dr. Pollock's property constitutes maliciousness within the meaning of § 523(a)(6). *Cf. Richmond Metro. Hosp. v. Hazelwood (In re Hazelwood),* 43 B.R. 208, 214 (Bankr. E.D.Va.1984) (holding that the tortious conversion of insurance proceeds that were irrevocably assigned to hospital for payment of medical services was malicious within the meaning of § 523(a)(6)).

Further, debtor did not have just cause or excuse to withhold payment owed to Dr. Pollock and therefore cannot avoid a finding of maliciousness in that way. "Dissatisfaction for services rendered has never justified the malicious and willful conversion of another's property." *Vagley v. Lavitsky (In re Lavitsky),* 11 B.R. 570, 571 (Bankr. W.D.Pa.1981). Therefore, this court holds

that debtor's actions constituted willful and malicious disposition of property properly belonging to Dr. Pollock.[5] The court will enter judgment in the amount of $5,138.00 for Dr. Pollock on his complaint. The judgment debt will be excepted from debtor's discharge in bankruptcy.

A separate order will be entered.

### ORDER

For reasons stated by the court from the bench at the conclusion of trial on September 25, 1997, and in the memorandum opinion entered today,

IT IS ORDERED that the counts of plaintiff's complaint pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4) are dismissed.

IT IS FURTHER ORDERED that judgment is entered in favor of plaintiff in the amount of $5,138.00 and that this judgment is excepted from debtor's discharge in bankruptcy pursuant to 11 U.S.C. § 523(a)(6).

---

**4.** The court in *In re Raymond* relied on *Collier's* statement of the general rule:

> Transfers in breach of a security agreement may give rise to nondischargeable liability when the debtor's conduct is knowing and certain or almost certain to cause financial harm.

4 *Collier on Bankruptcy* ¶ 523.12[1] (Lawrence P. King et al. eds., 15th ed. rev.1997).

**5.** In his complaint, Dr. Pollock asked the court to declare the existence of a constructive trust for the benefit of Dr. Pollock. The court's ruling in favor of Dr. Pollock under § 523(a)(6) renders this finding unnecessary.